UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** The Court GRANTS the motion for preliminary approval.

Before the Court is a motion for preliminary approval of class action settlement jointly filed by Plaintiff Amador Contreras ("Plaintiff") and Defendant Armstrong Flooring, Inc. ("Defendant" or "AFI"). *See* Dkt. # 35 ("*Mot.*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving papers, the Court **GRANTS** the motion.

I. Background

On March 3, 2020, Plaintiff initiated this putative wage and hour class action by filing a complaint in the Los Angeles County Superior Court. *See generally Notice of Removal*, Dkt. # 1 ("*NOR*"). Plaintiff alleges the following causes of action: (1) unpaid meal period premiums in violation of Cal. Lab. Code §§ 226.7 and 512(a); (2) unpaid rest period premiums in violation of Cal. Lab. Code § 226.7; (3) unpaid overtime in violation of Cal. Lab. Code §§ 510, 511, 1194, and 1198; (4) failure to provide day of rest in violation of Cal. Lab. Code §§ 551 and 552; (5) failure to pay minimum wage in violation of Cal. Lab. Code §§ 1194, 1194.2, 1997, and Minimum Wage Order; (6) wages not timely paid upon termination in violation of Cal. Lab. Code §§ 201, 202, and 203; (7) non-compliant wage statements in violation of Cal. Lab. Code § 226a; (8) unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (9) enforcement of the Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698, *et seq*. *Id*. at 2–3; *see generally Complaint*, Dkt. # 3-1, Ex. A ("*Compl.*"). Defendant answered the complaint, denying all liability and asserting twenty-nine affirmative defenses. *See generally NOR*; Dkt. # 3-2, Ex. B. Defendant then removed the action to this Court on April 2. *See generally NOR*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

On August 27, the parties engaged in all-day mediation before Tripper Ortman, Esq. *Mot*. 1:11–14; 13:21–23; Dkt. # 34; *Declaration of Laurel N. Haag*, Dkt. # 35-5 ("*Haag Decl*."), ¶ 20. The mediation included discussion and examination of the parties' respective positions on the legal and factual issues raised, and after arm's-length negotiations, at the conclusion of the mediation, the parties agreed to a settlement ("Settlement Agreement"). *Mot*. 14:8–24. The settlement class (the "Class" or "Class Members") is defined as "All current and/or former non-exempt employees that worked for AFI in California from April 1, 2016 to August 27, 2020." Dkt. # 35-2, Ex. A ("*Settlement Agreement*"), at 4.

The parties now ask the Court to grant preliminary approval of the proposed settlement. *See generally Mot*. Specifically, the parties ask the Court to: (1) grant preliminary approval of the Settlement Agreement; (2) conditionally certify the proposed Class; (3) appoint Plaintiff as Class Representative; (4) appoint Plaintiff's counsel as Class Counsel; (5) schedule a hearing date for final approval of the settlement and entry of judgment; (6) appoint Simpluris, Inc. ("Simpluris") as the Settlement Administrator; and (7) approve the proposed notice and opt-out procedures. *See generally id*.

II. <u>Class Certification for Settlement Purposes</u>

When parties settle an action prior to class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the court must determine whether a class exists. *Id*. (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the court must determine "whether [the] proposed settlement is fundamentally fair, adequate, and reasonable." *Id*. (citing *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998)) (internal quotation marks omitted). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

A. <u>Legal Standard</u>

Parties seeking certification of a settlement-only class must still satisfy the Federal Rule of Civil Procedure 23 standards. *See id.* at 1019–24. Under Rule 23, a plaintiff must satisfy the four prerequisites of Rule 23(a) *and* demonstrate that the action is maintainable under Rule 23(b). *See Amchem*, 521 U.S. at 613–14. The four prerequisites of Rule 23(a) are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). Plaintiff seeks certification under Rule 23(b)(3), *see Mot*. 16:6–19, which requires that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

"questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

    B.    <u>Discussion</u>

The Court considers the four requirements of Rule 23(a) and then the two requirements of Rule 23(b)(3).

        *i.*    *Numerosity*

The first requirement for maintaining a class action under Rule 23(a) is that the class is "so numerous that joinder of all members would be impracticable." Fed. R. Civ. P. 23(a)(1). Courts generally presume numerosity when there are at least forty members in the proposed class. *See Charlebois v. Angels Baseball, LP*, No. SACV 10-0853 DOC (ANx), 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011).

Here, the Class is comprised of approximately 116 individuals. *Haag Decl.* ¶ 33. Thus, numerosity is satisfied.

        *ii.*    *Commonality*

To fulfill the commonality requirement, Plaintiff must establish questions of law or fact common to the class as a whole. *See* Fed. R. Civ. P. 23(a)(2). The class claims must depend on a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. (internal quotation marks omitted) (emphasis removed). For the purposes of Rule 23(a)(2), even a single common question satisfies the requirement. *See id*. at 359; *Abdullah v. U.S. Sec. Assocs*., 731 F.3d 952, 957 (9th Cir. 2013) (citing *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 589 (9th Cir. 2012)).

Here, Plaintiff identifies several questions of fact and law common to the Class. Plaintiff alleges that all Class Members worked at a single manufacturing facility and were subject to the same labor and payroll practices. *Mot*. at 23–24. Plaintiff further contends the Class Members'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

injuries are a result of the same unlawful wage and hour practices. *Id*. Plaintiff alleges that common questions include (1) whether AFI's timekeeping systems and policies failed to record all hours worked, (2) whether AFI deprived Plaintiff and Class Members of meal periods or rest periods or required them to work during meal periods without compensation, (3) whether AFI timely furnished Plaintiff and Class Members with accurate wage statements, and (4) whether AFI's alleged failure to pay wages or issue accurate wage statements was willful. *Id*. at 25. Plaintiff, by challenging Defendant's policies, presents common questions that will likely generate common answers that can be resolved on a class-wide basis. *See Dukes*, 564 U.S. at 350. Accordingly, the commonality requirement is satisfied.

### iii. Typicality

Typicality requires a showing that the named plaintiffs are members of the class they represent and that their claims are "reasonably co-extensive with those of absent class members," though the claims need not necessarily be "substantially identical." *Hanlon*, 150 F.3d at 1020; *see* Fed. R. Civ. P. 23(a)(3). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992)) (internal quotation marks omitted). The typicality and commonality requirements somewhat overlap. *See Gen. Tel. Co. Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, Plaintiff alleges that he was employed by Defendant and, like every other member of the Class, was subject to the same practices and claims compensation as a result of Defendant's uniform policies and practices. *Mot*. at 24. Thus, Plaintiff's claims are based on the same facts and legal theories applicable to Class Members. *Id*. Accordingly, the typicality requirement is satisfied.

### iv. Adequacy

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has indicated that "[t]he proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 462 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

Here, Plaintiff has no apparent conflicts of interest with other Class Members. *Mot*. at 24. Plaintiff's interests are entirely coextensive with the interests of the class because Plaintiff was injured by the same company-wide practices to which the Class Members were subject and seeks the same relief. *Haag Decl*. ¶ 35. Plaintiff has already demonstrated his ability to advocate for the interests of the Class by initiating this litigation, undertaking extensive class discovery, and evaluating the proposed settlement. *Id*. Lastly, Plaintiff's counsel appear qualified and committed to representing the Class. Class Counsel have extensive experience handling wage and hour class actions, and have previously been appointed as class counsel in other cases. *Id*. ¶¶ 3–7, 36. Accordingly, the Court concludes that adequacy is satisfied.

   *v.*  *Predominance and Superiority*

Having concluded that the Class satisfies the Rule 23(a) factors, the Court now turns to Rule 23(b)(3). Rule 23(b)(3) provides that a class may be certified where common questions of law or fact predominate over individual questions and a class action is the superior method for adjudicating the controversy as a whole. Fed. R. Civ. P. 23(b)(3). The predominance aspect specifically "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

Plaintiff alleges that Defendant implemented uniform and systematic policies and practices for employees that resulted in violations of wage and hour laws, including that Defendant failed to pay all wages owed and failed to provide meal and rest premium wages. *See Mot*. at 24; *see generally Compl*. Claims based on this type of uniformly applied policy are generally sufficient for purposes of satisfying the requirements of Rule 23(b)(3). *See, e.g.*, *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 473 (E.D. Cal. 2009) (finding predominance, "despite the existence of minor factual differences between individual class members," where the case involved "alleged policies that required class members to work without compensation, meal and rest periods, and/or reimbursement for expenses"); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1065–68 (N.D. Cal. 2007) ("Plaintiffs have submitted evidence of [] uniform policies . . . such as training, recruiting and job descriptions. Accordingly, plaintiffs have made a strong showing that, as a general matter, common questions . . . predominate over individual variations."). As such, the Court concludes that common questions of law and fact similarly predominate here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

    As for superiority, given the size and amount of each individual Class Member's claim, Class Members have little incentive to litigate their claims on an individual basis because the out-of-pocket expense and personal commitment necessary to litigate each claim outweighs any potential recovery. *Haag Decl.* ¶37; *see In re Napster, Inc. Copyright Litig.*, No. C 04-1671 MHP, 2005 WL 1287611, at *8 (N.D. Cal. June 1, 2005) (finding superiority in part because "many small composers individually lack the time, resources, and legal sophistication to enforce their copyrights"). Furthermore, requiring 116 Class Members to litigate their claims separately would be ineffective and costly, resulting in duplicative and potentially conflicting proceedings. *Id.*; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) ("Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated."). A class action would thus be the superior method for adjudicating this action.

    In short, the Court concludes that both the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

    C.    <u>Conclusion</u>

    Plaintiff has met the requirements for class certification under Rule 23. Therefore, the Court **CERTIFIES** the Class for settlement purposes only. The Court also **APPOINTS** Plaintiff as Class Representative and **APPOINTS** the Law Offices of Buchbaum & Haag, LLP as class counsel.

III.    <u>Preliminary Approval of the Proposed Class Action Settlement</u>

    The next step is to determine whether the settlement reached is "fair, reasonable, and adequate" under Rule 23(e). *See* Fed. R. Civ. P. 23(e)(2).

    A.    <u>Legal Standard</u>

    The approval of a class action settlement is a two-step process under Rule 23(e) in which the court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-6352 MMM (CGx), 2014 WL 10212865, at *5 (C.D. Cal. July 28, 2014). "At the preliminary approval stage, a court determines whether a proposed settlement is within the range of possible approval and whether or not notice should be sent to class members." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

Cal. 2010) (internal quotation marks omitted). Preliminary approval amounts to a finding that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. *See Manual for Complex Litigation* (Fourth) § 13.14 (2004).

Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ma v. Covidien Holding, Inc.*, No. SACV 12-2161 DOC, 2014 WL 360196, at *4 (C.D. Cal. Jan. 31, 2014); *see also Eddings v. Health Net, Inc.*, No. CV 10-1744 JST (RZx), 2013 WL 169895, at *2 (C.D. Cal. Jan. 16, 2013).

After notice is given to the class, preliminary approval is followed by a review of the fairness of the settlement at a final fairness hearing, and, if appropriate, a finding that it is "fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1027. In making this determination, the district court must

> balance a number of factors: the strength of the plaintiffs' case; the risk, expense complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Staton*, 327 F.3d at 959; *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

The district court must approve or reject the settlement as a whole. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1026.

Where the parties negotiate a settlement agreement before the class has been certified, "settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

may normally be required under Rule 23(e).'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). Specifically, "such [settlement] agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair," and this "more exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (internal quotations omitted). Courts must especially scrutinize "subtle signs of collusion," such as a reversionary clause, a clear sailing agreement, or a disproportionately large attorneys' fees award. *Id.*

  B.  <u>Overview of the Settlement Agreement</u>

  Under the terms of the Settlement Agreement, Defendant agrees to pay a gross sum of $500,000 (the "Gross Settlement Amount" or "Gross Settlement Fund"). *Settlement Agreement* at 4, § 4. This amount includes (1) Class Counsel's fees and expenses, (2) an incentive award to Plaintiff, (3) PAGA penalties, and (4) administrative costs. *Id*. at 4–5, § 4(A). The remainder of the Gross Settlement Fund after the deduction of Class Counsel's fees and expenses, the incentive award, PAGA penalties, and administrative expenses (the "Net Settlement Fund") shall be paid to Class Members as their Individual Settlement Payments. *Id.* at 5, § 4(A). There is no reversion of any portion of the Gross Settlement Fund to Defendant. *Id.* at 5–6, § 4(A); *Haag Decl*. ¶ 22.

  Each Class Member shall be entitled to a pro rata share of the Net Settlement Fund. *Settlement Agreement* at 5, § 4(A). Individual Settlement Payments shall be awarded to Class Members from the Net Settlement Fund based on the number of workweeks each Class Member worked as an hourly-paid, non-exempt employee of AFI in California during the Class Period, multiplied by the weekly rate. *Id*. The weekly rate will be derived by dividing the Net Settlement Fund by the total workweeks worked by all Class Members. *Id*.

  Individual Settlement Payments will be allocated in two parts—(1) thirty percent as wages, and (2) seventy percent as penalties, interest, and other non-wage damages. *Id*. at 6, § 4(A). The wage portion will be reduced by any required deductions and withholdings. *Id*. Class Members are responsible for their own tax obligations with respect to their Individual Settlement Payments. *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

The Settlement Administrator will mail Individual Settlement Payment checks, and if a check is returned, the Settlement Administrator shall attempt to locate an alternative mailing address. *Id*. at 5, § 4(A). Any checks that remain unclaimed or uncashed after 180 days, or 30 days after a returned check is mailed again, shall be canceled and transmitted to the State of California Unclaimed Property Fund, to be held there in the name of and for the benefit of such Class Members under California's escheatment laws. *Id*. at 5–6, § 4(A).

In return, Class Members who do not opt-out will release Defendant from

> any and all claims, rights, demands, complaints, causes of action, obligations or liability of any and every kind, damages (including liquidated damages), penalties, costs or fees, including but not limited to all professional fees and costs incurred in relation to the Litigation, that were asserted in the Litigation or that could have been but were not asserted in the Litigation, whether known or unknown, including but not limited to claims for failure to provide or pay for missed or noncompliant meal breaks, failure to authorize and permit or pay for missed or noncompliant rest breaks, failure to pay or underpaid wages of any type (including minimum and/or overtime wages), failure to timely pay wages of any type, failure to furnish accurate itemized wage statements, failure to provide and maintain accurate timekeeping and/or payroll records, failure to reimburse employment-related expenses, violation of the California Unfair Competition Law, violation of the federal Fair Labor Standards Act ("FLSA"), and/or civil penalties pursuant to PAGA, based in whole or in part on any direct or imputed violation of any federal, state, local or administrative constitution, charter, law, rule, regulation or ordinance.

*Id*. at 11–12, § 6(C). Furthermore, "Class members expressly waive all rights that [they] might have under any law that is intended to protect [them] from waiving unknown Claims," particularly their rights under California Civil Code § 1542. *Id*. at 12, § 6(C). Finally, "Class Members will be deemed to have opted-in to the settlement for purposes of the FLSA by operation of cashing, depositing, or otherwise negotiating their Individual Settlement Payment check." *Id*.[1]

---

[1] The Settlement Agreement also states that "Contreras shall not be deemed to have released his individual claims in *Contreras v. Armstrong Flooring, Inc.*, Case No. 2:20-cv-02627 (C.D. Cal.), and workers' compensation charge number ADJ12142131." *Settlement Agreement* at 13, § 6(C).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

    C.    <u>Analysis of the Settlement Agreement</u>

           *i.*    *Fairness and Honest Negotiations*

    In general, evidence that a settlement agreement is arrived at through genuine arm's-length bargaining with a private mediator supports a conclusion that the settlement is fair. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Sarabi v. Weltman, Weinberg & Reis Co., L.P.A.*, No. CV 10-1777 AJB (NLSx), 2012 WL 3809123, at *1 (S.D. Cal. Sept. 4, 2012) (granting preliminary approval of a class action settlement where the parties engaged in extensive negotiations); *Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *10 (C.D. Cal. Apr. 29, 2014) (declining to apply a presumption but considering the arm's-length nature of the negotiations as evidence of reasonableness).

    Here, the evidence supports the conclusion that the settlement is fair and honest. Class Counsel conducted thorough investigation into the facts of the class action, including a review of relevant documents and data through formal and informal discovery, and a diligent investigation of the Class Members' claims against Defendant. *Mot*. 13:14–14:24. This discovery, investigation, research, and prosecution included, among other things: formal and informal exchange of information between the parties; meeting and conferring regarding the strengths and weaknesses of the Class's claims and AFI's defenses; reviewing documents and data including employment records, job descriptions, class-wide data, work shifts, pay periods, and terminations; and preparing damages/valuation models. *Id*.; *Haag Decl*. ¶ 19. This suggests that the parties have a clear view of the strengths and weaknesses of their positions in the case.

    Moreover, the parties reached the Settlement Agreement after engaging in adversarial and arm's-length mediation conducted by Tripper Ortman, Esq. *Id*. With the aid of the mediator's evaluations, the parties agreed that this case was well-suited for settlement and arrived at a settlement that was acceptable to all parties given the legal issues and potential costs and risks faced by both sides if litigation proceeded. *Id*.

    The time and effort spent on settlement negotiations, as well as mediation with Tripper Ortman, Esq., are evidence that the settlement was not collusive and thus weigh in favor of preliminary approval of the Settlement Agreement. *See Hanlon*, 150 F.3d at 1029. Nothing indicates that the negotiations were dishonest or collusive in any way, and the discovery conducted in this case suggests that the parties were well informed and had sufficient information to assess the merits of their claims. *See Glass v. UBS Fin. Servs., Inc.*, No. CV 06-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (reasoning that the parties' having undertaken informal discovery prior to settling supports approving the class action settlement). The Court is therefore satisfied that the Settlement is the product of fair and honest negotiations.

      *ii.*     *Settlement Amount*

To evaluate whether a settlement falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

Here, Plaintiff has not presented estimates of Defendant's total maximum liability. Plaintiff only included calculations for (1) "civil penalties" under PAGA for paystub violations and (2) an estimation, based on an assumed 20% violation rate, of damages for unpaid meal periods. *Mot*. at 16–18. However, Plaintiff brought nine claims against Defendant. *Id*. 2:11–25. Although Plaintiff viewed most of the liability as being associated with paystub violations, *Haag Decl*. ¶ 25, the Court cannot be sure that the Settlement Agreement is fair without an estimate of Defendant's *maximum* liability.

However, the Settlement does confer substantial benefits on Class Members who would face significant risk of no recovery and ongoing expenses if forced to proceed with the litigation. *Mot*. 19:6–18; *Haag Decl*. ¶ 24. The average net recovery per Class Member is approximately $2,825.43. *Mot*. 19:6–18. Plaintiff has detailed the defenses undermining Plaintiff's ability to prove liability, as well as the risks to maintaining class certification. *Id*. 16:1–16. Given that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" is a relevant factor, *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (citing *In re Mego*, 213 F.3d at 458), this reality favors preliminary approval.

Accordingly, prior to the final approval hearing, Plaintiff is **ORDERED** to present a memorandum detailing his estimate of Defendant's total maximum liability, including a breakdown of the maximum amount for each of the nine claims and how each amount was calculated.

      *iii.*     *Attorneys' Fees and Costs*

When approving attorneys' fees in common fund cases, courts in the Ninth Circuit have discretion to apply the percentage-of-the-fund method or the lodestar method to determine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

reasonable attorneys' fees. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944–45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method).

If employing the percentage-of-the-fund method, the "starting point" or "benchmark" award is 25 percent of the total settlement value. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). A court may adjust the award from the benchmark but must explain its reasons for so doing. *See Powers*, 229 F.3d at 1255–57.

Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. *Vizcaino*, 290 F.3d at 1050. To determine attorneys' fees under the lodestar method, a court must multiply the reasonable hours expended by a reasonable hourly rate. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294 n.2 (9th Cir. 1994). The court may then enhance the lodestar with a "multiplier," if necessary, to arrive at a reasonable fee. *Id.*

In this case, Class Counsel requests an award of $125,000, or 25 percent of the Gross Settlement Amount, and up to $12,500 in costs. *Mot.* 20:14–26. Plaintiff has not provided briefing to support this request.

Accordingly, the Court **ORDERS** Class Counsel to submit a memorandum justifying the 25 percent attorneys' fees request under the *Vizcaino* factors. *See Vizcaino*, 290 F.3d at 1048–50 (examining (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by plaintiffs; and (5) awards made in similar cases). Class Counsel is further instructed to provide the requested hourly rate and hours expended in this case so that the Court can calculate the lodestar value and use it to cross-check the reasonableness of the fees and costs award. In its motion, Class Counsel should explain whether a multiplier should be applied and, if so, why the proposed multiplier is appropriate in this case. *See Vizcaino*, 290 F.3d at 1048 ("Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."). Finally, Class Counsel must submit a detailed summary of its costs and expenses for the Court's consideration.

Case 2:20-cv-03087-PSG-SK   Document 36   Filed 12/11/20   Page 13 of 18   Page ID
#:271

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

   iv.  *Enhancement Awards*

 "Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958. When considering requests for incentive awards, courts consider five principal factors:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Further, courts also typically examine the propriety of an incentive award by comparing it to the total amount other class members will receive. *See Staton*, 327 F.3d at 975.

 Plaintiff seeks an enhancement award of $10,000, in addition to his individual settlement payment. *See Mot.* 19:20–20:13; *Settlement Agreement* at 4; § 4(A). Class Counsel states Plaintiff has (1) assisted counsel with discovery, (2) regularly conferred with counsel on the status of the case and strategies for prosecuting the claims, attended an all-day mediation, and (3) reviewed the proposed settlement to ensure its terms are fair. *Haag Decl.* ¶ 32.

 The Court will determine the reasonableness of the requested enhancement awards when ruling on Plaintiff's motion for final approval. Before the final approval hearing, the Court **ORDERS** Plaintiff to submit a memorandum further justifying Plaintiff's service award as it compares to the Gross Settlement Amount and the average Individual Settlement Payments to the Class Members. *See SFBSC Mgmt.*, 944 F.3d at 1056–58. Plaintiff should also submit a declaration supporting the enhancement award, including a detailed description of Plaintiff's efforts in pursuit of this case.

   v.  *Administration Costs*

 The Notice of Class Action Settlement provides that settlement administration costs are not to exceed $6,000, *see* Dkt. # 35-3, Ex. B ("*Notice*"), at 3, and the parties estimate settlement administration costs will be $5,838, *see Mot.* 4:4–5. This request is reasonable considering the estimated size of the Class, 116 individuals. *See Haag Decl.* ¶ 33; *Ching v. Siemens Indus.*, No. 11–cv–04838–MEJ, 2014 WL 2926210, at *2 (N.D. Cal. June 27, 2014) (approving an estimated $15,000 claims administrator fee for sixty-eight claims); *Ozga v. U.S. Remodelers, Inc.*, No. C

Case 2:20-cv-03087-PSG-SK   Document 36   Filed 12/11/20   Page 14 of 18   Page ID #:272

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

09–05112 JSW, 2010 WL 3186971, at *2 (N.D. Cal. Aug. 9, 2010) (granting $10,000 to the claims administrator for 156 claims).

      *vi.*      PAGA Penalties

The parties have agreed to a PAGA penalty of $25,000. *Settlement Agreement* at 4–5, § 4A. Seventy-five percent of that amount, $18,750, will go to the California Labor & Workforce Development Agency ("LDWA") and twenty-five percent, $6,250, will be distributed to aggrieved employees as part of the Net Settlement Amount. *Id.*; *see also* Cal. Lab. Code § 2699(i) (providing that 75 percent of civil penalties recovered by aggrieved employees should be distributed to the LWDA).

The portion of the PAGA allocation that will be distributed to the LDWA represents 3.75 of the Gross Settlement Amount, which is higher than the zero to two percent range generally approved by courts. *See, e.g.*, *In re M.L. Stern Overtime Litig.*, No. CV 07-0118 BTM (JMAx), 2009 WL 995864, at *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 2 percent); *Hopson v. Hanesbrands, Inc.*, No. CV 08-0844 EDL, 2008 WL 3385452, at *1 (S.D. Cal. Apr. 13, 2009) (approving a PAGA settlement of 0.3 percent). The fact that it is higher than two percent does not raise concerns that Plaintiff is skirting the "special responsibility to [his] fellow aggrieved workers" or using the PAGA claim "merely as a bargaining chip, wherein the rights of individuals . . . may be waived for little additional consideration in order to induce the employer to agree to a settlement," and, in fact, suggests the opposite. *See O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016). Accordingly, the Court finds that the settlement of the claims for penalties under PAGA is reasonable.

      *vii.*      Remaining Funds

The Settlement Agreement provides that "any checks that remain undelivered or uncashed checks after 180 days shall be cancelled by the Settlement Administrator, and the funds associated with such cancelled checks shall be transmitted by the Settlement Administrator pursuant to governing California law to the State of California Unclaimed Property Fund, to be held there in the name of and for the benefit of such Class Members under California's escheatment laws." *Settlement Agreement* at 5–6, § 4(A). Courts in this district have approved class action settlements that deal with remaining funds in this manner. *See, e.g.*, *Sequeira Ruiz v. JCP Logistics, Inc.*, No. SACV131908JLSANX, 2016 WL 6156211, at *1 (C.D. Cal. Mar. 10, 2016); *Krumbine v. Schneider Nat'l Carriers, Inc.*, No. 10CV4565GHKJEMX, 2013 WL 12209908, at *1 (C.D. Cal. Aug. 6, 2013); *Rooker v. Gen. Mills Operations, LLC*, No. CV 17-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

467 PA (PLAX), 2018 WL 4962089, at *1 (C.D. Cal. Mar. 26, 2018). Accordingly, the Court is satisfied with the parties' proposal for dealing with any remaining funds.

       *viii.*    *Opt-in for FLSA*

Finally, the Settlement is within the range of possible approval because Class Members must opt-in in order to release their FLSA claims. California district courts have uniformly interpreted the FLSA to require that class members affirmatively elect to participate in a lawsuit before they are bound by its settlement. *See Tijero v. Aaron Bros., Inc.*, No. C 10-1089 SBA, 2013 WL 60464, at *7–*8 (N.D. Cal. Jan. 2, 2013) ("[T]he Court finds that it is contrary to § 216(b) to bind class members to a release of FLSA claims where, as here, the members have not affirmatively elected to participate in the lawsuit by filing a written consent form."); *see also La Parne v. Monex Deposit Co.*, SACV 08-302 DOC, 2010 WL 4916606, at *3, *8 (C.D. Cal. Nov. 29, 2010) ("[O]nly class members who affirmatively 'opt-in' to the Settlement should be bound by the Settlement's release of FLSA liability . . . several courts have determined that it would be contrary to the statute to bind class members who do not affirmatively elect, through opt-in procedures, to participate in the FLSA suit."); *Stokes v. Interline Brands, Inc.*, No. 12-cv-5527-JD, 2014 WL 5826335, at *4 (N.D. Cal. Nov. 10, 2015) ("FLSA claims are collective action claims that require an affirmative opt-in by written consent on the part of the claimants."); *Kakani v. Oracle Corp.*, No. C 06-6493 WHA, 2007 WL 1793774, at *7 (N.D. Cal. June 19, 2007) ("The FLSA prohibits traditional class actions and authorizes only an opt in collective action . . . . Workers who voluntarily send in a claim form and affirmatively join the action, of course, can be bound to a full release of all federal and state rights. But it is unconscionable to try and take away the FLSA rights of *all* workers, whether or not they choose to join in affirmatively.").

In this case, the Settlement Agreement states that "Class Members will be deemed to have opted-in to the settlement for purposes of the FLSA by operation of cashing, depositing, or otherwise negotiating their Individual Settlement Payment check." *Settlement Agreement* at 12, § 6(C). "Courts in the Ninth Circuit have found such FLSA waivers enforceable where there is no concern that the settlement agreement adequately compensates the class for the release of all claims." *See Dawson v. Hitco Carbon Composites, Inc.*, No. CV 16-7337 PSG (FFMx), 2019 WL 6138467, at *7 n.2 (C.D. Cal. July 9, 2019). At this preliminary approval stage, the Court finds that the Settlement Agreement is adequate, and therefore the Settlement Agreement contains a proper FLSA waiver.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

D.     Notice to Class Members

Before the final approval hearing, the court requires adequate notice of the settlement be given to all class members. Federal Rule of Civil Procedure 23 provides:

> For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Plaintiff has provided a proposed Notice of Class Action Settlement. *See generally Notice*. It sets forth in clear language: (1) the nature of the action and the essential terms of the Settlement; (2) the meaning and nature of the Class; (3) Class Counsel's application for attorneys' fees and the proposed enhancement award payments for Plaintiff; (4) the formula for calculation and distribution of the net settlement amount; (5) how to opt out of the Settlement; (6) how to dispute the total number of workweeks worked during the claim period; (7) how to object to the Settlement; (8) information concerning the release; and (9) the Court's procedure for final approval of the Settlement. *See generally id.*

Within ten calendar days after the entry of the Preliminary Approval Order, Defendant will provide to the Settlement Administrator a list of Class Members ("Class Member List") that includes the last known addresses of each Class Member. *Settlement Agreement* at 8–9; § 5(C). The Settlement Administrator will attempt to locate the Class Members' updated addresses by conducting a National Change of Address check as to each address. *Id*. Within thirty calendar days of receipt of the Class List, the Settlement Administrator will send by first-class mail to all putative class members a Notice of Class Action Settlement and Settlement Opt-Out Form. *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

If a Class Notice is returned as undeliverable, the Settlement Administrator will promptly re-mail it to a forwarding address or to an updated address obtained from a skip-trace search. *Id*.

Any class member who wishes to opt out from the Settlement Agreement, object to the Settlement Agreement, or dispute the number of workweeks credited to him or her, must do so in writing to the Settlement Administrator postmarked no later than forty-five calendar days from the date of the mailing. *Id*.

Having reviewed the Class Notice, the Court finds it satisfactory.

IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** the motion for preliminary approval of the class action settlement. The Court **PRELIMINARILY APPROVES** the Settlement Agreement, **APPOINTS** Plaintiff as Class Representative and **APPOINTS** the Law Offices of Buchbaum & Haag, LLP as class counsel. The Court also **APPOINTS** Simplurius as the Settlement Administrator and **APPROVES** the proposed Class Notice. The final approval hearing is set for **June 21, 2021**.

At least thirty days before the final approval hearing and in addition to the motion for final approval of the class action settlement, the Court **ORDERS** Plaintiff to file:

- A memorandum detailing his estimate of Defendant's total maximum liability, including a breakdown of the maximum amount for each of the nine claims and how each amount was calculated.

- A memorandum justifying the 25 percent attorneys' fees request under the *Vizcaino* factors. *See Vizcaino*, 290 F.3d at 1048–50 (examining (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by plaintiffs; and (5) awards made in similar cases). Class Counsel is further instructed to provide the requested hourly rate and hours expended in this case so that the Court can calculate the lodestar value and use it to cross-check the reasonableness of the fees and costs award. In its motion, Class Counsel should explain whether a multiplier should be applied and, if so, why the proposed multiplier is appropriate in this case. Finally, Class Counsel must submit a detailed summary of its costs and expenses for the Court's consideration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8037 PSG (SKx) | Date | December 11, 2020 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc. et al | | |

- A memorandum justifying Plaintiff's service award as it compares to the Gross Settlement Amount and the average Individual Settlement Payments to the Class Members. Plaintiff should also submit a declaration supporting the enhancement award, including a detailed description of Plaintiff's efforts in pursuit of this case.

**IT IS SO ORDERED.**