1  Jolee Land, SBN 240940
2  jolee.land@phelps.com
   Reed L. Russell, Fla. SBN 0184860
3  reed.russell@phelps.com
   Raquel R. Jefferson, Fla. SBN 0103758
4  raquel.jefferson@phelps.com
5  PHELPS DUNBAR, LLP
6  100 Ashley Drive South, Suite 2000
   Tampa, Florida 33602
7  Telephone:  813-472-7550
8  Facsimile:  813-472-7570

9  KRISTEN J. NESBIT, SBN 242426
10 knesbit@fisherphillips.com
   FISHER & PHILLIPS LLP
11 444 South Flower Street, Suite 1500
12 Los Angeles, California 90071
   Telephone: (213) 330-4500
13 Facsimile: (213) 330-4501

14
   Attorneys for Defendant
15 ARMSTRONG FLOORING, INC.

16
   Brent S. Buchsbaum, SBN: 194816
17 brent@buchsbaumhaag.com
18 Laurel N. Haag, SBN: 211279
   laurel@buchsbaumhaag.com
19 BUCHSBAUM & HAAG LLP
20 100 Oceangate, Suite 1200
   Long Beach, CA 90802
21 Telephone: 562-733-2498
22 Facsimile: 562-628-5501

23 Attorneys for Plaintiff
24 AMADOR CONTRERAS

25

26

27

28

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| AMADOR CONTRERAS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ARMSTRONG FLOORING, INC., a Pennsylvania corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No:  2:20-cv-03087-PSG(SKx)<br><br>**JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  June 21, 2021<br>Time: 1:30 p.m.<br>Courtroom: 6A<br><br>Complaint Filed:   February 21, 2020<br>Removal Filed:      April 2, 2020 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 21, 2021, at 1:30p.m., or as soon thereafter as the matter may be heard before Honorable Philip S. Gutierrez in Courtroom 6A of the United States District Court for the Central District of California, Western Division, located at 350 West First Street, Los Angeles, California 90012, Plaintiff Amador Contreras ("Plaintiff") and Defendant Armstrong Flooring, Inc. ("Defendant" or "AFI") will and hereby do move for an order granting final approval of:

1.      The class action settlement described herein and as set forth in the parties' Class Action Settlement Agreement (the "Class Settlement"), on the grounds that the Class Settlement is fair, reasonable, and adequate because:

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

·    A Net Settlement Amount of approximately $327,750 [$500,000 - $125,000 (attorneys' fees) - $12,500 (litigation costs) - $10,000 (enhancement award) - $18,750 (PAGA penalties) - $6,000 (administration costs)]] is available for distribution to the Class Members who did not submit a timely and valid Request for Exclusion ("Settlement Class Members");

·    No Requests for Exclusion, Notices of Objection, and Workweek Disputes objections to the Settlement were submitted to the Settlement Administrator; and

·    No Requests for Exclusion were submitted to the Settlement Administrator.

2.    Payment in the total amount of $6,000 to the Settlement Administrator, Simpluris, Inc., for the Settlement Administration Costs; and

3.    Allocation of the penalties under the California Labor Code Private Attorneys General Act of 2004, Labor Code section 2698, et seq. ("PAGA"), in the amount of $25,000 ("PAGA Penalties"), of which seventy-five percent (75%) or $18,750 will be paid to the California Labor and Workforce Development Agency ("LWDA"), and twenty-five percent (25%) or $6,250 will be a part of the Net Settlement Amount for distribution to the Settlement Class Members.

This motion is based on the accompanying Memorandum of Points and Authorities and the concurrently-filed Declaration of Settlement Administrator (Lindsay Kline) in support thereof; as well as Plaintiff's Motion for Attorneys' Fees and Costs and the Memorandum in Response to Court's Order Regarding Estimate of Defendant's Total Maximum Liability, Declaration of Class Counsel (Laurel N. Haag), and Declaration of Class Representative (Amador Contreras) in support

JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

thereof (Doc. 37);[1] as well as the pleadings and other records on file with the Court in this matter; and upon such documentary evidence and oral argument as may be presented at or before the hearing on this motion.

DATED:  May 21, 2021

PHELPS DUNBAR, LLP

By: */s/ Jolee Land*
JOLEE LAND
REED L. RUSSELL
RAQUEL RAMIREZ JEFFERSON
Attorneys for Defendant
ARMSTRONG FLOORING, INC.

DATED:  May 21, 2021

LAW OFFICES OF BUCHSBAUM & HAAG, LLP

By: */s Laurel N. Haag*
LAUREL N. HAAG
BRENT S. BUCHSBAUM
Attorneys for Plaintiff
AMADOR CONTRERAS

---

[1] As directed by this Court's minute entry of December 11, 2020 granting preliminary approval of the Class Settlement.

PD.31566559

JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ iii

MEMORANDUM AND POINTS OF AUTHORITIES ........................................... 1

I.    SUMMARY OF MOTION .................................................. 1

II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND ................................................ 3

III.  SUMMARY OF TERMS OF THE CLASS SETTLEMENT ........................................................ 5

IV.  THE SETTLEMENT ADMINISTRATION PROCESS ..................... 8

V.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS SETTLEMENT ...................................... 10

      A.   The Class Settlement should be approved because it resulted from arm's length negotiations and mediation with an experienced and neutral mediator after extensive investigation and discovery. ............................ 12

      B.   Plaintiff's case is not so strong that it renders the Class Settlement unfair, inadequate, or unreasonable. ................................................. 14

      C.   The complexity, expense, and likely duration of the lawsuit in the absence of the Class Settlement also favors approval. ................................................. 16

      D.   The risk of maintaining class action status through trial also favors approval. ................................ 18

      E.   The amount offered in settlement does not militate against approval of the Class Settlement. ................... 18

      F.   The extent of discovery completed and stage of the proceedings favor final approval of the Class Settlement. ................................................... 19

      G.   The experience and views of Class Counsel favor final approval of the Class Settlement. ................... 20

      H.   There is no government participant in this case, and thus this factor is inapposite. ........................... 21

VI.  The Class Members' reaction to the Class Settlement strongly favors final approval. ............................. 22

JOINT NOTICE OF MOTION AND
MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

A.  The Class Settlement adequately addresses the issue of opting into the Class Settlement for purposes of resolving Class Members' FLSA claims. .................................. 23

VII.  CONCLUSION ................................................................................. 24

PD.3156655

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                   **Page(s)**

3

*Antonio Hurtado v. Rainbow Disposal Co., Inc.*,
4       2021 WL 79350 (C.D. Cal. Jan. 4, 2021).................................................................. 11

5

*In re Apple Inc. Device Performance Litig.*,
6       2021 WL 1022867 (N.D. Cal. March 17, 2021) ................................................... 11

7

*Arnaud van der Gracht de Rommerswael on Behalf of Puma*
8       *Biotechnology, Inc. v. Auerbach*,
        2019 WL 7753447 (C.D. Cal. Jan. 7, 2019).......................................................... 12
9

*Arnold v. FitFlop USA, L.L.C.*,
10      No. 11-CV-0973 W (KSC), 2014 WL 1670133
11      (S.D. Cal. April 28, 2014) ...................................................................................... 22

12

*In re Austrian & German Bank Holocaust Litig.*,
13      80 F. Supp. 2d 164 (S.D.N.Y. 2000)..................................................................... 22

14

*Beltran v. Olam Spices & Vegetables, Inc.*,
15      No. 1:18-cv-01676-NONE-SAB, 2020 WL 7769822
        (E.D. Cal. Dec. 29, 2020) ...................................................................................... 23

16

*In re Bluetooth Headset Prods. Liab. Litig.*,
17      654 F.3d 935 (9th Cir. 2011) .................................................................................. 13

18

*Chan v. Sutter Health Sacramento Sierra Region*,
19      2016 WL 7638111 (C.D. Cal. June 9, 2016)......................................................... 20

20

*Dawson v. Hitco Carbon Composites, Inc.*,
21      No. CV 16-7337 PSG, 2019 WL 6138467 (C.D. Cal. July 9, 2019).................. 23

22

*Donald v. Xanitos, Inc.*,
23      2017 WL 1508675 (N.D. Cal. April 27, 2017) ..................................................... 12

24

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
        2017 WL 4685536 (C.D. Cal. May 8, 2017).......................................................... 12
25

*Jeter–Polk v. Casual Male Store, LLC*,
26      2016 WL 9450452 (C.D. Cal. March 4, 2016)...................................................... 13

27

28

PD.3156655

*Lowe v. Popcornopolis LLC*,
    2020 WL 5991509 (C.D. Cal. July 8, 2020) .......................................................... 13

*Luna v. Universal City Studios, LLC*,
    2016 WL 10646310 (C.D. Cal. Sept. 13, 2016)...................................................... 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)............................................................................ 22

*Officers for Just. v. Civil Service Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................. 11, 18, 19

*In re Portal Software, Inc., Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. November 26, 2017)............................................... 17

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ............................................................................... 14

*Principe v. Ukropina* (*In re Pac. Enters. Sec. Litig.*),
    47 F.3d 373 (9th Cir. 1995)................................................................................... 21

*Retta v. Millennium Products, Inc.*,
    2016 WL 6520138 (C.D. Cal. Sept. 21, 2016)....................................................... 12

*Roberti v. OSI Systems, Inc.*,
    2015 WL 8329916 (C.D. Cal. Dec. 8, 2015)........................................................... 12

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................................. 12

*Satchell v. Fed. Exp. Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)........................................................ 14

*Smith Wholesale Co., Inc. v. Philip Morris USA Inc.*,
    2005 WL 2030655 (E.D. Tenn. Aug. 23, 2005)...................................................... 20

*van Wingerden v. Cadiz, Inc.*,
    2017 WL 5565263 (C.D. Cal. Feb. 8, 2017)..................................................... 11, 12

*Vasquez v. Packaging Corp. of Am.*,
    2020 WL 6785650 (C.D. Cal. Aug. 17, 2020).............................................*passim*

PD.3156655

**Statutes**

29 U.S.C. § 216(b) ................................................................................................... 23

California Business & Professions Code § 17200, et seq. ........................................ 3

California Civil Code § 1542 ..................................................................................... 8

California Labor Code § 226.7 .................................................................................. 3

California Labor Code §§ 226.7 and 512(a) .............................................................. 3

California Labor Code §§ 510, 511, 1194, and 1198 ................................................ 3

California Labor Code §§ 551 and 552 ..................................................................... 3

California Labor Code §§ 1194, 1194.2, 1197 ......................................................... 3

Fair Labor Standards Act of 1938, 29 U.S.C §§ 201, et seq. ............................ *passim*

Labor Code §§ 201, 202, and 203 ............................................................................ 3

Labor Code § 226(a) ............................................................................................ 3, 16

Labor Code §226(e)(1) ............................................................................................ 16

Private Attorneys General Act of 2004, California Labor Code § 2698,
   et seq. ..................................................................................................... 2, 3, 4, 5

**Other Authorities**

Fed. R. Civ. P. 23 ......................................................................................... 10, 11, 23

PD.3156655

## **MEMORANDUM AND POINTS OF AUTHORITIES**

## I.    SUMMARY OF MOTION

Plaintiff Amador Contreras ("Plaintiff") and Defendant Armstrong Flooring, Inc. ("Defendant" or "AFI") (collectively, the "Parties") seek final approval of the Class Action Settlement Agreement (the "Class Settlement").  The Parties reached the Class Settlement after engaging in significant informal discovery, investigation, and arm's-length negotiations.  The Class Settlement resulted from a formal mediation conducted by Tripper Ortman, Esq., a well-respected California mediator who is experienced in wage-and-hour class action litigation.

The Class Settlement provides for a "Gross Settlement Amount" of $500,000 which is being paid to resolve claims asserted by the following class (which has been certified for purposes of settlement):

> All current and/or former non-exempt employees who worked for AFI in California from April 1, 2016 to August 27, 2020 ("Class" or "Class Members").[2]

The Parties also move for final approval of all payments allocated and provided for by the Class Settlement, to be paid from the Gross Settlement Amount, including and not limited to, a Class Representative Enhancement Payment in the amount of $10,000 to Plaintiff, attorneys' fees in the amount of $125,000 (or 25% of the Gross Settlement Amount) to Class Counsel ("Attorneys' Fees"),[3] litigation costs in the

---

[2]    Class Settlement, at 4.
[3]    Class Settlement, at 4.

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

amount of $12,500 to Class Counsel, Settlement Administration Costs in the amount of $6,000 (the "Settlement Administration Costs"),[4] and penalties under the Private Attorneys General Act of 2004, California Labor Code section 2698, et seq. ("PAGA Penalties") in the amount of $25,000, of which twenty-five percent (75%), or $18,750,[5] will be distributed to the California Labor and Workforce Development Agency ("LDWA").[6]   The remaining twenty-five percent (25%) of the PAGA Penalties, or $6,250, along with the remainder of the Gross Settlement Amount (after the Class Representation Enhancement Payment, Attorneys' Fees and Costs, and Settlement Administration Costs are deducted) will be distributed to the class as the "Net Settlement Amount."

The Class Settlement is fair, adequate, and reasonable, and is the product of arm's-length, good-faith negotiations by experienced counsel, presided over by a highly regarded mediator experienced in handling complex wage-and-hour class action lawsuits.  The Settlement has also been well-received by the Class – not a single Class Member has objected to the Class Settlement or submitted a timely and valid Request for Exclusion from the Class Settlement.

Accordingly, the Court should grant final approval of the Settlement, and all payments allocated and provided for by the Settlement Agreement, including and not

---

[4]   Class Settlement, at 5; Declaration of Lindsay Kline, at 17.  This amount falls within the $6,000 cap on administration costs set forth in the Court's December 11, 2020 minute entry granting preliminary approval of the Class Settlement.
[5]   Class Settlement, at 4-5.
[6]   Class Settlement, at 4-5.

JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

PD.31566559

limited to the Settlement Administration Costs and PAGA Penalties.

## II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On February 21, 2020, Contreras filed an action against AFI, styled *Amador Contreras, individually and on behalf of all others similarly situated v. Armstrong Flooring, Inc., a Pennsylvania corporation; and DOES 1 through 50, inclusive*, Case No. 20STCV06871, in the Superior Court of the State of California, for the County of Los Angeles.  Doc. 3-1.  AFI was served with the Complaint on March 2, 2020. On April 1, 2020, AFI removed this action to the United States District Court for the Central District of California.  Doc. 1.

In the Complaint, Plaintiff alleged nine causes of action against AFI for wage-and-hour violations: (1) Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums); (2) Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums); (3) Violation of California Labor Code §§ 510, 511, 1194, and 1198 (Unpaid Overtime); (4) Violation of California Labor Code §§ 551 and 552 (Failure to Provide Day of Rest); (5) Violation of California Labor Code §§ 1194, 1194.2, 1197 and Minimum Wage Order (Failure to Pay Minimum Wage); (6) Violation of Labor Code §§ 201, 202, and 203 (Wages Not Timely Paid Upon Termination); (7) Violation of Labor Code § 226(a) (Non-Compliant Wage Statements); (8) Violation of California Business & Professions Code § 17200, et seq.; and (9) Violation of Labor Code § 2698, et seq. (PAGA).

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

AFI filed an Answer denying any liability associated with the claims and allegations, and that Plaintiff or the putative class members were entitled to relief. AFI also denied that this case is appropriate for class or representative treatment. AFI maintained, among other things, that it complied with federal and California laws in all respects. Doc. 3-2.

On June 25, 2020, pursuant to a stipulation of the parties, the Court entered an order which referred the matter to private mediation. Doc. 33. On August 27, 2020 the parties participated in a private mediation before Tripper Ortman, Esq., a well-respected California mediator who is experienced in wage-and-hour class action litigation. Doc. 34. After extensive investigation and with the aid of the mediator's evaluations, the parties reached the Class Settlement to resolve this lawsuit. Doc. 34.

On November 6, 2020 the Parties filed a joint motion for preliminary approval of the Class Settlement. Doc. 35. The Court granted preliminary approval for the Class Settlement in chambers on December 11, 2020, thereby preliminarily approving the terms of the Class Settlement, the Notice of Class Action Settlement forms and procedures ("Class Notice"), and the proposed administration procedures and associated deadlines. Doc. No. 36 ("Preliminary Approval Order"). The Preliminary Approval Order appointed the Law Offices of Buchbaum & Haag, LLP as Class Counsel, and appointed Simpluris, Inc. as Settlement Administrator. Doc. 36.

The Parties now move for final approval of the Class Settlement, Settlement Administration Costs, and allocation for PAGA Penalties.

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

## III. SUMMARY OF TERMS OF THE CLASS SETTLEMENT

Under the Settlement Agreement, AFI has agreed to pay a Gross Settlement Amount of $500,000 on a non-reversionary basis. Subject to approval by the Court, the Net Settlement Amount will be calculated by deducting the following amounts from the Gross Settlement Amount: (1) Attorneys' Fees and Costs, consisting of attorneys' fees in the amount of $125,000 and litigation costs in the amount of $12,500 to Class Counsel; (2) a Class Representative Enhancement Payment in the amount of $10,000 to Plaintiff; (3) Settlement Administration Costs in the amount of $6,000; (4) and the LWDA's portion of the PAGA Penalties ("LWDA Payment") in the amount of $18,750.[7] The Net Settlement Amount will be paid to the following class (certified by the Court for purposes of the Class Settlement): "All current and/or former non-exempt employees that worked for AFI in California from April 1, 2016, to August 27, 2020." *See* Doc. No. 36.

The entire Net Settlement Amount will be distributed to the Class Members who did not submit a Request for Exclusion or otherwise object to the Class Settlement (the "Settlement Class Members").[8] Each Settlement Class Member's share of the Net Settlement Amount (or "Individual Settlement Share") will be based on his or her Workweeks employed for AFI during the Class Period, and no portion shall revert to AFI.[9] Each Settlement Class Member's Individual Settlement Payment

---

[7] Class Settlement, at 4-5.
[8] Class Settlement, at 4-5.
[9] Class Settlement, at 5.

JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

will be calculated by determining the number of Workweeks that each Settlement Class Member worked as an hourly-paid or non-exempt employee of AFI in the State of California during the Class Period and multiplying the Settlement Class Member's individual Workweeks by the Weekly Rate, which is derived by dividing the Net Settlement Amount by the total Workweeks worked by all Settlement Class Members.[10]

Individual Settlement Payment checks will remain valid and negotiable for one hundred and eighty (180) days after the date of issuance.[11] If an Individual Settlement Payment check is returned before the expiration of the 180-day period ("Returned Check"), within five (5) days of receipt of the Returned Check, the Settlement Administrator shall undertake a skip-trace search for an alternate mailing address and re-mail the Returned Check to an alternate mailing address (if one is located), under a cover letter indicating that the Returned Check will continue to be valid and negotiable for thirty (30) days after the date of re-mailing.[12] In the event that any checks mailed to Class Members are not cashed, deposited, or otherwise negotiated within the 180-day period, no forwarding address can be located for a Returned Check, or a Returned Check is re-mailed but not cashed, deposited, or otherwise negotiated within the 30-day period from the re-mailing of the Returned Check, then the checks shall be cancelled by the Settlement Administrator, and the funds

---

[10] Class Settlement, at 5.
[11] Class Settlement, at 5.
[12] Class Settlement, at 5.

JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

associated with such cancelled checks shall be transmitted by the Settlement Administrator pursuant to governing California law to the State of California Unclaimed Property Fund, to be held there in the name of and for the benefit of such Class Members under California's escheatment laws, and such Settlement Class Members shall nevertheless be bound to the Settlement and the Final Approval Order.[13]

Individual Settlement Payments shall be allocated in two parts: (1) thirty percent (30%) as wages and (2) seventy percent (70%) as penalties, interest, and other non-wage damages.[14]  The wage portion will be reported on an IRS Form W-2, and the portion allocated to penalties and interest will be reported on an IRS Form-1099.[15] The Individual Settlement Payments will be reduced by any required deductions and withholdings with respect to the wage portion of the Individual Settlement Payments.[16]  Settlement Class Members otherwise shall be responsible for their own tax obligations with respect to the settlement payments sent to them.[17]

The Net Settlement Amount is currently estimated to be $ 327,750 [$500,000 - $125,000 - $12,500 - $10,000 - $18,750 - $6,000].  The deadline for Class Members to postmark and submit a written objection to the Settlement ("Notice of Objection"), Request for Exclusion, and/or written dispute regarding the number of Workweeks

---

[13] Class Settlement, at 5-6.
[14] Class Settlement, at 6.
[15] Class Settlement, at 6.
[16] Class Settlement, at 6.
[17] Class Settlement, at 6.

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

credited to each of them ("Workweeks Dispute") to the Settlement Administrator was March 6, 2021, or 45 days from the date of mailing of Class Notice by the Settlement Administrator ("Response Deadline").    Doc. 36.    To date no Notice of Objection, Request for Exclusion, or Workweeks Dispute has been received by the Settlement Administrator.[18]    There are thus one hundred and sixteen (116) Class Members who did not submit timely and valid Requests for Exclusion, and are, therefore deemed to be Settlement Class Members.[19]

The Class Settlement provides for a release of all claims that were asserted, or could have been asserted, in this lawsuit.[20]    It also provides that Class Members waive rights they might have under any law intended to protect them from waiving unknown claims, including California Civil Code § 1542.[21]    In regard to the Fair Labor Standards Act ("FLSA") claims asserted in the lawsuit, the Class Settlement provides that "[t]o the extent required or permitted under applicable law, Class Members will be deemed to have opted-in to the settlement for purposes of the FLSA by operation of cashing, depositing, or otherwise negotiating their Individual Settlement Payment check."[22]

## IV.    THE SETTLEMENT ADMINISTRATION PROCESS

The Settlement Administrator (Simpluris, Inc.) took all necessary steps to

---

[18]    Declaration of Lindsay Kline, at 10.
[19]    Declaration of Lindsay Kline, at 11.
[20]    Class Settlement, at 11-12.
[21]    Class Settlement, at 12.
[22]    Class Settlement, at 12.  The release of FLSA claims is discussed in greater detail *infra*.

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

PD.31566559

effectuate the notice and settlement administration process, as set forth in the Court's December 11, 2020 Preliminary Approval Order.

On December 17, 2020, Simpluris received the Court-approved text for the Class Notice.[23]   Between January 8 and January 20, 2021, Simpluris received a mailing list in Microsoft Excel format containing the full names, most recent mailing addresses and telephone numbers, employee identification numbers, and start and end dates of employment for individuals identified as Class Members AFI's Counsel ("Class List").[24]   The Class List contained information for one-hundred and sixteen (116) individuals identified as Class Members.[25]

1.    On January 20, 2021, after conducting a National Change of Address search to update the addresses in the Class List, Simpluris mailed the Class Notice to one hundred and sixteen (116) Class Members identified in the Class List via First-Class U.S. Mail.[26]   After the initial mailing, a total of three (3) Class Notices were returned to Simpluris. Upon receipt, Simpluris promptly performed a skip-trace search and found two (2) new addresses for the returned mail. Ultimately, there is one (1) undeliverable Class Notice.[27]

As of the date of this Motion, only one Class Notice has been returned to Simpluris as undeliverable, with no additional forwarding address available.[28]

---

[23]   Declaration of Lindsay Kline, at 5.
[24]   Declaration of Lindsay Kline, at 6.
[25]   Declaration of Lindsay Kline, at 6.
[26]   Declaration of Lindsay Kline, at 8.
[27]   Declaration of Lindsay Kline, at 9.
[28]   Declaration of Lindsay Kline, at 9.

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

As of the date of this Motion, Simpluris has not received any Notices of Objection, Requests for Exclusion, or Workweeks Disputes from Class Members.[29] One hundred fifteen (115) of the one hundred sixteen (116) Settlement Class Members, representing 99.1% of the Class, will be paid their portion of the Net Settlement Amount (i.e., Individual Settlement Share), in accordance with the Class Settlement.[30] The Net Settlement Amount is estimated to be $327,750.[31] The highest Individual Settlement Share is currently estimated to be at least $3,872.02 and the average Individual Settlement Share is currently estimated to be at least $2,825.43.[32]

## V.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS SETTLEMENT

A court may finally approve a class action settlement only after a hearing and on finding that the settlement is fair, reasonable and adequate.    Fed. R. Civ. P. 23(e)(2).    In determining whether a settlement is fair, reasonable and adequate, a district court must balance a number of factors:  the strength of the plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement. *Vasquez v. Packaging Corp. of Am.*, 2020

---

[29]  Declaration of Lindsay Kline, at 10.
[30]  Declaration of Lindsay Kline, at 14.
[31]  Declaration of Lindsay Kline, at 15.
[32]  Declaration of Lindsay Kline, at 16.

10

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

WL 6785650, *2 (C.D. Cal. Aug. 17, 2020) (listing cases). Additionally, "courts often consider whether the settlement is the product of arms-length negotiations." *van Wingerden v. Cadiz, Inc.*, 2017 WL 5565263, *6 (C.D. Cal. Feb. 8, 2017) (citation omitted). The list of factors is not exhaustive and should be tailored to each case. *Officers for Just. v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

These factors must be considered collectively, not individually: "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Antonio Hurtado v. Rainbow Disposal Co., Inc.*, 2021 WL 79350, *3 (C.D. Cal. Jan. 4, 2021) (internal quotation marks and citation omitted). The Rule 23(e)(2) inquiry is conducted in light of the Ninth Circuit's "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Vasquez*, 2020 WL 6785650, * 3 (*quoting Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). In conducting its review, a court should give "proper deference to the private consensual decision of the parties." *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022867, *6 (N.D. Cal. March 17, 2021) (citation omitted).

As this Court has previously observed in relation to the final approval of a class settlement, "the question is not whether the final product could be prettier smarter or snazzier, but whether it is fair, adequate and free from collusion." Vasquez, 2020 WL 6785650, *3 (internal quotation marks, italics, and citation omitted). As the following discussion reveals, the Class Settlement is incontrovertibly fair, adequate, and free

11

PD.31566559

1    from any hint of collusion.

2    **A.      The Class Settlement should be approved because it resulted from**
3            **arm's length negotiations and mediation with an experienced and**
            **neutral mediator after extensive investigation and discovery.**
4

5        The Ninth Circuit has observed that "[w]e put a good deal of stock in the

6    product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. West*

7    *Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Although some courts apply a

8    "presumption of fairness" to a settlement agreement when it is recommended for

9
10   final[33] approval by class counsel after "arm's-length bargaining," *Donald v. Xanitos,*

11   *Inc.*, 2017 WL 1508675, *2 (N.D. Cal. April 27, 2017), this Court has in the past
12

13   rejected application of this presumption at the final approval stage of class settlement.

14   *Retta v. Millennium Products, Inc.*, 2016 WL 6520138, *4 (C.D. Cal. Sept. 21, 2016).

15   Nonetheless, whether the settlement was the product of "arm's-length bargaining"
16

17   remains an important factor in the decision to grant final approval of a class settlement

18   in this judicial district.  *van Wingerden*, 2017 WL 5565263, *6.[34]

19
20       In considering whether the Class Settlement was the product of "arm's-length

21   bargaining," the Court should consider whether "the Parties exchanged enough
22

23   ───────────────
     [33] This presumption is customarily applied to motions for preliminary approval of a class settlement.
24   [34] *See Arnaud van der Gracht de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*, 2019 WL
     7753447, *3 (C.D. Cal. Jan. 7, 2019) ("Considering the benefit to Puma stockholders, arms-length negotiations
     before a qualified mediator, cost and risk of continued litigation in four separate derivative actions, and other factors
25   from *Staton*, the Court grants final approval of the proposed Settlement."); *Flo & Eddie, Inc. v. Sirius XM Radio,*
     *Inc.*, 2017 WL 4685536, *6 (C.D. Cal. May 8, 2017) ("Having presided over much of the litigation, the Court is
26   confident that the parties engaged in arms-length negotiations and that this factor too favors settlement."); *Luna v.*
     *Universal City Studios, LLC*, 2016 WL 10646310, *5 (C.D. Cal. Sept. 13, 2016) ("The fact that the parties engaged
     in arms-length negotiations also counsels in favor of approval of the settlement."); *Roberti v. OSI Systems, Inc.*,
27   2015 WL 8329916, *3 (C.D. Cal. Dec. 8, 2015) ("The Court is satisfied that the proposed Settlement is not the
     product of collusion between the parties.  The arms-length nature of the negotiation resulting in the proposed
28   Settlement supports final approval.").

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

factual information so that both sides had a fair opportunity to evaluate fully the factual and legal issues present in this case, as well as the risks associated with further litigation." *Jeter–Polk v. Casual Male Store, LLC*, 2016 WL 9450452, *6 (C.D. Cal. March 4, 2016). The Court should also look for "subtle signs" that Class Counsel has allowed self-interest to infect settlement negotiations, including the presence of a reversionary clause, a "clear sailing" arrangement for separate payment of Class Counsel's fees, or a disproportionately large distribution to Class Counsel. *Lowe v. Popcornopolis LLC*, 2020 WL 5991509, *5 (C.D. Cal. July 8, 2020) (citation omitted); *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

This Court has already determined (in the Preliminary Approval Order) that the Class Settlement is the result of fair and honest arm's-length negotiations. Doc. 36. In that Order this Court reviewed Class Counsel's investigation into the facts of the case, including the review of relevant documents and data obtained by both formal and informal discovery. As the Court observed, this course of conduct "suggests that the parties have a clear view of the strengths and weaknesses of their positions in this case." Doc. 36. Furthermore, the Court found nothing in the terms of the Class Settlement suggestive of collusion; there are no reversionary clauses or "clear sailing" agreements, and no authority supports the notion that a 25 percent attorney's fee award is (in a wage and hour class action arising under California law) so large as to

13

JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

suggest collusion.[35]

Finally, the Class Settlement resulted from adversarial and arms-length mediation conducted by Tripper Ortman, Esq., a mediator with significant experience in California wage and hour class action cases.  "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007).

In sum, the facts and circumstances of the Parties' negotiations, as well as the terms of the Class Settlement, demonstrate that the Class Settlement was the product of arms'-length negotiations.  Accordingly, this factor strongly militates in favor of approval.

**B.    Plaintiff's case is not so strong that it renders the Class Settlement unfair, inadequate, or unreasonable.**

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement.  This factor is generally satisfied when plaintiffs must overcome barriers to make their case." *Vasquez*, 2020 WL 6785650, *3 (citations omitted).

During the litigation and mediation, AFI contended, among other things, that its policies and practices fully complied with California law; individual issues would

---

[35] The Parties understand that the exact recovery of Class Counsel will be separately determined by the Court. However, nothing suggests that the putative 25 percent recovery by Class Counsel in a case of this nature is so disproportionate as to be indicative of collusion.  To the contrary, the Ninth Circuit has held that 25 percent is not only a reasonable percentage fee award based on the total class settlement amount, but "a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach." *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) (internal quotation marks in original).

JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

predominate because its non-exempt employees were subject to variant employment policies, practices, and procedures; and any consideration of the reasons why any Class Member who failed to receive a meal or rest break or worked off-the-clock (if at all) would raise individual issues that could not be resolved on a class-wide basis. For example, AFI contended that it provided compliant meal and rest breaks or, where someone was unable to take a break, paid the required statutory premium. Likewise, AFI contended that all employees were paid for all hours worked, including any overtime or double-time premiums for hours over eight or twelve in a workday. AFI further contended that it complies with California's day-of-rest requirement and that any employees working beyond the presumptive limit had waived the requirement after being advised of their entitlement to the day of rest. AFI also contended that its pay statements were accurate and provided all information needed to its employees to promptly and easily determine that they had been paid properly for all time worked. Finally, AFI contended that it paid all wages owed to employees on termination in compliance with California law. AFI would have relied on its own records and testimony to establish these defenses. It is thus clear that Plaintiff faces numerous risks if this litigation continues, including and not limited to, the risk of little or no recovery if no liability is found or if a class is not certified. Plaintiff also faces the possibility that, if there is any recovery against AFI after years of litigation and a lengthy and costly trial, the amount may be less than the amount negotiated in this Settlement.

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

Plaintiff would have to overcome at least these issues if litigation continued. Accordingly, this factor weighs in favor of approving the Class Settlement.

## C. The complexity, expense, and likely duration of the lawsuit in the absence of the Class Settlement also favors approval.

The next factor in assessing the fairness of the proposed settlement is "the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement." *Vasquez*, 2020 WL 6785650, *3 (citation omitted).

At the threshold, the parties dispute whether the Class can be validly certified in the absence of a settlement. The Parties will have to undergo significant additional litigation before the action is capable of being evaluated for certification absent settlement, and (assuming certification is sought) will have to suffer the costs and risks of a full-blown class certification proceeding. For this reason alone, this factor weighs in favor of finding the Class Settlement being fair, reasonable, and adequate as AFI does not object to settlement certification.

Additionally, Plaintiff's primary claim of class liability against AFI was that AFI failed to provide all hours worked on its employees' paystubs in violation of Labor Code Section 226(a). Said alleged violation could have exposed AFI to potential statutory penalties, under Labor Code §226(e)(1). However, in order for this claim to be viable, AFI contended that Plaintiff and the class members must have suffered an injury. There was a legitimate dispute whether the number of hours worked and the rate of pay could be promptly and easily determined by looking at the

16

paystubs.  If Plaintiff is correct and the relevant information could not be easily determined by examining paystubs, even if a class is certified expensive and time-consuming individual (rather than class-wide) discovery would be required to advance the litigation.

Defendant may have filed a Motion for Summary Judgment based on several of the issues. As a result, the parties would incur considerably more attorneys' fees and costs through trial. This settlement avoids those risks and the accompanying expense.  See *In re Portal Software, Inc.*, *Sec. Litig.*, 2007 WL 4171201 at * 3 (N.D. Cal. November 26, 2017) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Thus, this factor favors final approval.

For these reasons, and given the truism that nothing ever goes as planned in litigation, this litigation promises to be lengthy, time-consuming, expensive, and increasingly complex if the Class Settlement is not approved.  "If the case were to proceed further, substantial fees and costs would be incurred by both parties because Class Counsel would have to (1) complete the discovery process, (2) obtain class certification, and (3) overcome Defendant's defenses, likely at summary judgment. Because the Settlement Agreement eliminates the delay, costs, and uncertainty that further litigation would create, this factor supports approval."  *Vasquez*, 2020 WL 6785650, *3 (citation omitted).

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

**D.    The risk of maintaining class action status through trial also favors approval.**

As set forth *supra*, AFI has indicated it would strongly oppose any certification of a class for other than settlement purposes.  Thus, this factor militates in favor of final approval of the Class Settlement.  *Vasquez*, 2020 WL 6785650, *3 ("Because Defendant would have 'forcefully opposed' class certification through trial, this factor favors final approval of the Settlement Agreement.") (internal quotation marks in original) (citation omitted).

**E.    The amount offered in settlement does not militate against approval of the Class Settlement.**

The next factor to consider in assessing the fairness, reasonableness, and adequacy of the proposed settlement is the amount of the settlement.  As this Court has previously stated in regard to this factor:

> The very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.  The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.  Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation.

*Vasquez*, 2020 WL 6785650, *4 (internal brackets, quotations marks, and citations omitted).

Here, the Class Settlement reflects a compromise on all of the disputed issues.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers*

18

PD.31566559

*for Just.*, 688 F.2d at 628.  "Ultimately the amount of the [settlement payments] will be less than what some class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to.  This is precisely the stuff from which negotiated settlements are made."  *Id.*

The Net Settlement Amount, currently estimated at $327,750, will be distributed to the Class Members depending on the number of workweeks worked during the Class.  Based on 115 Class Members being paid, the average net recovery per Class Member will be approximately $2,825.43.  These are substantial sums that adequately recognize the Plaintiff's and Class Members' damages, given the risks of diminished recovery or no recovery at all, and compensates each of them appropriately.  Class Members will be able to receive payment soon after Final Approval rather than having to wait through years of protracted and uncertain litigation, where they could potentially receive nothing.

Thus, this factor militates in favor of final approval, or, at a minimum, is neutral (and thus does not militate against final approval).

**F.    The extent of discovery completed and stage of the proceedings favor final approval of the Class Settlement.**

This next factor requires the Court to gauge whether Plaintiff had sufficient information to make an informed decision about the merits of his case.  *Vasquez*, 2020 WL 6785650, *4.  In this case, Plaintiff not only participated in formal and informal discovery, but also participated in a full day of mediation, a mediation which resulted

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

in the Class Settlement.  As courts have recognized, when parties actively and in good faith participate in mediation process, it provides clarity to the litigation by forcing the parties to carefully consider the issues and closely evaluate the strengths and weaknesses of their case (something that might not happen in the ordinary course until the summary judgment stage).  *See Smith Wholesale Co., Inc. v. Philip Morris USA Inc.*, 2005 WL 2030655, *2 (E.D. Tenn. Aug. 23, 2005) ("Even if the parties' dispute is not settled during the mediation process, mediation often forces the parties to reevaluate their claims and positions and serves to narrow and clarify issues."). Accordingly, "[t]he use of an experienced mediator is accorded significant weight in determining fairness." *Chan v. Sutter Health Sacramento Sierra Region*, 2016 WL 7638111, *12 (C.D. Cal. June 9, 2016) (citation omitted).

In light of Plaintiff's formal and informal discovery efforts, and the Parties' good-faith participation in the mediation process, this factor also militates in favor of final approval of the Class Settlement.  Vasquez, 2020 WL 6785650, *5 ("Accordingly, the Court is confident that Plaintiff had enough information to make an informed decision about the settlement, after arm's length negotiation and mediation, based on the strengths and weaknesses of the case.").

### G.    The experience and views of Class Counsel favor final approval of the Class Settlement.

This next factor requires the Court to consider the experience and views of Class Counsel in regard to the Class Settlement.  "Parties represented by competent

counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Principe v. Ukropina* (*In re Pac. Enters. Sec. Litig.*), 47 F.3d 373, 378 (9th Cir. 1995).36

As this Court observed in the Preliminary Approval Order, "Class Counsel have extensive experience handling wage and hour class actions, and have previously been appointed as class counsel in other cases."  Doc. 36.

In light of the experience and views of Class Counsel, the Court should find that this factor favors final approval of the Class Settlement.  See Vasquez, 2020 WL 6785650, *5 ("Here, Class Counsel has extensive experience handling consumer and employment class action cases.  The Court is satisfied that this experience has allowed Class Counsel to evaluate the merits of the claims and risks associated with prosecuting them through trial and appeal.  The Court accordingly credits Counsel's determination that the settlement is fair and reasonable and finds that this factor weighs slightly in favor of final approval.") (citations omitted).

> **H.    There is no government participant in this case, and thus this factor is inapposite.**

"Because there is no government entity directly participating in the case, this factor is not relevant to the analysis." *Vasquez*, 2020 WL 6785650, *5.

---

36 While instructive, Class Counsel's views do not give rise to a presumption of fairness.  *Vasquez*, 2020 WL 6785650, *5.

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

## VI.    The Class Members' reaction to the Class Settlement strongly favors final approval.

The next factor the Court must consider is the Class Members' reaction to the Class Settlement.    As one court has observed, "[t]his factor presents the most compelling argument favoring settlement." *Arnold v. FitFlop USA, L.L.C.*, No. 11-CV-0973 W (KSC), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014); *see In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004).    Here, mailing was attempted to all 116 Class Members, including one remailing, and 115 received it. However, not a single Class Member has objected to the Class Settlement or sought exclusion from the Class.    Accordingly, this factor strongly favors final approval of the Class Settlement.    *Vasquez*, 2020 WL 6785650, *6 (concluding that this factor favored final approval of California wage and hour class action where no class member objected and only four sought exclusion from the class).

PD.31566559

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

**A.   The Class Settlement adequately addresses the issue of opting into the Class Settlement for purposes of resolving Class Members' FLSA claims.**

Although not a traditional factor to be considered in conjunction with final approval of a class settlement, in wage and hour disputes involving claims arising under the FLSA consideration must be given to how to address the "opt-in" requirement applicable to a FLSA collective action.   *See* 29 U.S.C. § 216(b). However, the requirements of Rule 23 and the FLSA can both be met by a "waiver" provision in the settlement agreement treats the negotiation of the settlement check as the class member's election to "opt-in" to the FLSA portion of the settlement. *Beltran v. Olam Spices & Vegetables, Inc.*, No. 1:18-cv-01676-NONE-SAB, 2020 WL 7769822, at *8 (E.D. Cal. Dec. 29, 2020) (listing cases).  "Courts in the Ninth Circuit have found such FLSA waivers enforceable where there is no concern that the settlement agreement adequately compensates the class for the release of all claims." *Dawson v. Hitco Carbon Composites, Inc.*, No. CV 16-7337 PSG (FFMx), 2019 WL 6138467, at *7 n.2 (C.D. Cal. July 9, 2019) (listing cases).

As this Court observed in the Preliminary Approval Order, the Class Settlement contains just such a provision.[37]  Doc. 36.  Furthermore, as set forth supra, there is no valid concern that the Class Settlement does not adequately compensate the Class Members for the release of all of their claims.  Accordingly, the presence of FLSA

---

[37]   Class Settlement, at 12.

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

claims within the Class Settlement is not a factor which suggests the Class Settlement should not be approved.  To the contrary, the Class Settlement addresses those claims in the manner which has been approved by the courts of the Ninth Circuit, including this Court.  See Vasquez, 2020 WL 6785650, *6.

## VII.   CONCLUSION

For the reasons stated herein and in the accompanying declarations, the Parties respectfully submit that the Class Settlement is fair, reasonable, and adequate to the Class and each Class Member, and should therefore be approved.

DATED:  May 21, 2021

PHELPS DUNBAR, LLP

By:  */s/ Jolee Land*
JOLEE LAND
REED L. RUSSELL
RAQUEL RAMIREZ JEFFERSON
Attorneys for Defendant
ARMSTRONG FLOORING, INC.

DATED:  May 21, 2021

LAW OFFICES OF BUCHSBAUM & HAAG, LLP

By: */s Laurel N. Haag*
LAUREL N. HAAG
BRENT S. BUCHSBAUM
Attorneys for Plaintiff
AMADOR CONTRERAS

JOINT NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

PD.31566559

## CERTIFICATE OF SERVICE

I, the undersigned, am at least 18 years old and not a party to this action.  I am employed in the County of Hillsborough with the law offices of Phelps Dunbar LLP and my business address is 100 South Ashley Drive, Suite 2000, Tampa, Florida 33602.

On May 21, 2021, I served the foregoing document entitled

**JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| LAW OFFICES OF BUCHSBAUM & HAAG, LLP | Attorney for Plaintiff AMADOR CONTRERAS |
| Brent S. Buchsbaum | |
| Laurel N. Haag | |
| 100 Oceangate, Suite 1200 | |
| Long Beach, CA 90802 | brent@buchsbaumhaag.com |
| Tel:  562.733.2498 | laurel@buchsbaumhaag.com |
| Fax:  562.628.5501 | |

**[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Tampa, Florida in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website.  The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed May 21, 2021, at Tampa, Florida.

| | | |
|---|---|---|
| Lynn Malkowski | By: | *s/Lynn Malkowski* |
| Print Name | | Signature |

PD.31566559

JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT