## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

Present: The Honorable    Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (In Chambers):    The Court GRANTS both motions.**

Before the Court are two motions: (1) a motion for final approval of class action settlement jointly filed by Plaintiff Amador Contreras ("Plaintiff") and Defendant Armstrong Flooring, Inc. ("AFI" or "Defendant"), *see generally Motion for Final Approval*, Dkt. # 39 ("*Final Approval Mot.*"); and (2) a motion for attorneys' fees and costs and an incentive award filed by Plaintiff, *see generally Motion for Attorneys' Fees and Costs*, Dkt. # 37 ("*Fees Mot.*"). Defendant does not oppose the Fees motion. The Court conducted a fairness hearing on July 2, 2021. Having considered the moving papers and the information provided at the hearing, the Court **GRANTS** both motions.

I.    Background

On March 3, 2020, Plaintiff initiated this putative wage and hour class action by filing a complaint in the Los Angeles County Superior Court. *See generally Complaint*, Dkt. # 3-1 ("*Compl.*"). Plaintiff alleges the following causes of action: (1) unpaid meal period premiums in violation of Cal. Lab. Code §§ 226.7 and 512(a); (2) unpaid rest period premiums in violation of Cal. Lab. Code § 226.7; (3) unpaid overtime in violation of Cal. Lab. Code §§ 510, 511, 1194, and 1198; (4) failure to provide day of rest in violation of Cal. Lab. Code §§ 551 and 552; (5) failure to pay minimum wage in violation of Cal. Lab. Code §§ 1194, 1194.2, 1997, and the Minimum Wage Order; (6) wages not timely paid upon termination in violation of Cal. Lab. Code §§ 201, 202, and 203; (7) non-compliant wage statements in violation of Cal. Lab. Code § 226a; (8) unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (9) enforcement of the Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698, *et seq. Compl.* ¶ 2. Defendant answered the complaint, denying all liability and asserting twenty-nine affirmative defenses. *See generally Notice of Removal*, Dkt. # 1 ("*NOR*"); Dkt. # 3-2. Defendant then removed the action to this Court on April 2. *See generally NOR.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

On August 27, the parties engaged in an all-day mediation before Tripper Ortman, Esq. *See Order Granting Preliminary Approval of Class Action Settlement*, Dkt. # 36 ("*Prelim. Approval Order*"), at 2; *Declaration of Laurel N. Haag*, Dkt. # 37-2 ("*Haag Decl.*"), ¶ 16. The mediation included discussion and examination of the parties' respective positions on the legal and factual issues raised, and, at the conclusion of the mediation, the parties agreed to a settlement ("Settlement Agreement"). *Prelim. Approval Order* at 2.

On November 6, 2020, the parties filed a joint motion for preliminary approval of the proposed class settlement. *See generally* Dkt. # 35. The Court granted the motion on December 11. *See generally Prelim. Approval Order.* Specifically, the Court (1) granted preliminary approval of the Settlement Agreement, (2) certified the class for settlement purposes under Rule 23, (3) appointed Plaintiff as Class Representative, (4) appointed the Law Offices of Buchsbaum & Haag, LLP as Class Counsel, (5) scheduled a final approval hearing,[1] (6) appointed Simpluris, Inc. ("Simpluris") as the Settlement Administrator, and (7) approved the proposed Class Notice. *See generally id.*

The Court also ordered Plaintiff to file, in addition to the motion for final approval, three memoranda. *Id.* at 17 18.

First, the Court ordered Plaintiff to file a memorandum detailing his estimate of Defendant's total maximum liability, including a breakdown of the maximum amount for each of the nine claims and how each amount was calculated.[2] *Prelim. Approval Order* at 17.

Second, the Court ordered Plaintiff to file a memorandum justifying the 25 percent attorneys' fees request under the *Vizcaino* factors. *Id.* The Court instructed Plaintiff to provide the requested hourly rate and hours expended in this case so that the Court could calculate the lodestar value and use it to cross-check the reasonableness of the fees and costs award. *Id.* The Court further instructed Plaintiff to explain whether a multiplier should be applied and, if so, why the proposed multiplier is appropriate in this case. *Id.* Finally, the Court instructed Plaintiff to submit a detailed summary of its costs and expenses for the Court's consideration. *Id.*

Third, the Court ordered Plaintiff to file a memorandum justifying Plaintiff's service award as it compares to the Gross Settlement Amount and the Individual Settlement Payments to

---

[1] The Court rescheduled the hearing on the motion for final approval to July 2, 2021. *See* Dkt. # 41.

[2] Plaintiff filed a separate memorandum in response to this order. *See generally Memorandum in Response to Court's Order Re: Estimate of Defendant's Total Maximum Liability*, Dkt. # 37-1 ("*Estimate Memo*").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

Class Members, as well as a declaration from Plaintiff supporting such an award including a detailed description of Plaintiff's efforts in pursuit of this case. *Id.* at 18.

The parties now move for (1) final approval of the Settlement Agreement and (2) an order awarding attorneys' fees, costs, and an incentive award. *See generally Final Approval Mot.*; *Fees Mot.*

Specifically, the parties move for an order (1) granting final approval of the Settlement Agreement; (2) approving payment of $6,000 to Simpluris; and (3) approving payment of PAGA penalties to the California Labor and Workforce Development Agency ("LDWA"). *See Final Approval Mot.*, 2:24  3:19. Plaintiff also requests $125,000 in attorneys' fees, costs of $12,500, and an incentive award of $10,000 for Plaintiff. *See Fees Mot.* 2:13  18.

II.    <u>Final Approval of the Settlement Agreement</u>

    A.    <u>Overview of the Settlement Agreement</u>

The settlement class (the "Class" or "Class Members") is defined as "All current and/or former non-exempt employees that worked for AFI in California from April 1, 2016 to August 27, 2020." *Settlement Agreement*, Dkt. # 35-2 at 4.[3]

Under the Settlement Agreement, Defendant will create a non-reversionary common fund in the amount of $500,000 ("Gross Settlement Amount" or "Gross Settlement Fund"). *Settlement Agreement* § 4. This amount is made up of (1) Class Counsel's attorneys' fees of $125,000, (2) Class Counsel's costs of $ 12,500, (3) an incentive award to Plaintiff of $10,000, (4) PAGA payment to the LWDA of $18,750, and (4) administrative costs of $6,000. *Id.* § 4(A); *Fees Mot.* 2:3  12. The remainder of the Gross Settlement Fund after the deduction of Class Counsel's fees and expenses, the incentive award, PAGA payments to the LWDA, and administrative expenses (the "Net Settlement Fund")    which amounts to $327,750, *Fees Mot.* 2:12    shall be paid to Class Members as their Individual Settlement Payments. *Settlement Agreement* § 4(A). There is no reversion of any portion of the Gross Settlement Fund to Defendant. *Id.* § 4(A); *Haag Decl.* ¶ 17.

Each Class Member shall be entitled to a pro rata share of the Net Settlement Fund. *Settlement Agreement* § 4(A). Individual Settlement Payments shall be awarded to Class Members from the Net Settlement Fund based on the number of workweeks each Class Member worked as an hourly-paid, non-exempt employee of AFI during the Class Period, multiplied by

---

[3] The Court cites to the Settlement Agreement's original pagination throughout this Order.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

the weekly rate. *Id.* The weekly rate will be derived by dividing the Net Settlement Fund by the total workweeks worked by all Class Members. *Id.* The highest share of the Net Settlement Fund is $3,872.02, and the average share is $2,825.43. *See Final Approval Mot.* 19:8  11.

Individual Settlement Payments will be allocated in two parts: (1) thirty percent as wages, and (2) seventy percent as penalties, interest, and other non-wage damages. *Settlement Agreement* § 4(A). The wage portion will be reduced by any required deductions and withholdings. *Id.* Class Members are responsible for their own tax obligations with respect to their Individual Settlement Payments. *Id.*

Simpluris will mail Individual Settlement Payment checks, and if a check is returned, Simpluris shall attempt to locate an alternative mailing address within five days of receipt of the returned check. *Id.* § 4(A). Any checks that remain unclaimed or uncashed after 180 days, or 30 days after a returned check is mailed again, shall be canceled and transmitted to the State of California Unclaimed Property Fund, to be held there in the name of and for the benefit of such Class Members under California's escheatment laws. *Id.* § 4(A).

In return, Settlement Class Members will release Defendant from

> any and all claims, rights, demands, complaints, causes of action, obligations or liability of any and every kind, damages (including liquidated damages), penalties, costs or fees, including but not limited to all professional fees and costs incurred in relation to the Litigation, that were asserted in the Litigation or that could have been but were not asserted in the Litigation, whether known or unknown, including but not limited to claims for failure to provide or pay for missed or noncompliant meal breaks, failure to authorize and permit or pay for missed or noncompliant rest breaks, failure to pay or underpaid wages of any type (including minimum and/or overtime wages), failure to timely pay wages of any type, failure to furnish accurate itemized wage statements, failure to provide and maintain accurate timekeeping and/or payroll records, failure to reimburse employment-related expenses, violation of the California Unfair Competition Law, violation of the federal Fair Labor Standards Act ("FLSA"), and/or civil penalties pursuant to PAGA, based in whole or in part on any direct or imputed violation of any federal, state, local or administrative constitution, charter, law, rule, regulation or ordinance.

*Id.* § 6(C). Furthermore, "Class [M]embers expressly waive all rights that [they] might have under any law that is intended to protect [them] from waiving unknown Claims," particularly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

their rights under California Civil Code § 1542.  *Id.* § 6(C).  Finally, "Class Members will be deemed to have opted-in to the settlement for purposes of the FLSA by operation of cashing, depositing, or otherwise negotiating their Individual Settlement Payment check."  *Id.*[4]

B.    Legal Standard

A court may finally approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).  Approval or rejection of a settlement agreement is committed to the district court's sound discretion.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

In determining whether a settlement is fair, reasonable and adequate, the court must "balance a number of factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement." *Id.*; *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").  Additionally, under Rule 23(e), the Court must "scrutinize the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement;" (2) whether the parties agreed to a "clear sailing arrangement;" and (3) whether the settlement includes a "kicker" or "reverter" clause.  *See Briseño v. Henderson*, No. 19-56297, 2021 WL 2197968, at *8  *9 (9th Cir. June 1, 2021).

The district court must approve or reject the settlement  as a whole  after comprehensively exploring all factors.  *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").  The Court may not delete, modify or rewrite particular provisions of the settlement. *See id.*  The Court is cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair,

---

[4] The Settlement Agreement also states that "Contreras shall not be deemed to have released his individual claims in *Contreras v. Armstrong Flooring, Inc.*, Case No. 2:20-cv-02627 (C.D. Cal.), and workers' compensation charge number ADJ12142131." *Settlement Agreement* § 6(C).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

adequate and free from collusion." *Id.* In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

C.    Discussion

The Court considers the eight *Hanlon* approval factors, the Fair Labor Standards Act ("FLSA") waiver, and the three *Briseño* factors in turn.

i.    *Strength of Plaintiff's Case*

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) (internal quotation marks omitted). This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Plaintiff asserts that the Class would have had to overcome Defendant's defenses on the merits, which included arguments that its policies and practices complied with California and federal law. *See Final Approval Mot.* 23:22 24:24. Further, throughout the litigation and mediation, Defendant maintained that individual issues predominated and that the claims could not be resolved on a class-wide basis. *See id.* Plaintiff agrees that he would have faced challenges regarding "at least these issues" if litigation continued. *Id.* 25:1. The Court agrees and finds that this factor weighs slightly in favor of final approval.

ii.    *Risk, Expense, Complexity, and Duration of Further Litigation*

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement. *See Officers for Justice*, 688 F.2d at 625.

Plaintiff argues that, without a settlement, he would need to go through costly and risky litigation before certifying the case as a class action. *See Final Approval Mot.* 25:11 15. Additionally, individual discovery might be necessary because Defendant allegedly failed to provide all hours worked on its employees' paystubs and, as such, it may not be possible to determine the number of hours worked and pay rate by looking only at the paystubs. *See id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

25:19 26:5.  The parties also contend that if the case proceeds, they would accrue substantial fees and costs because the litigation would be lengthy, time-consuming, and complex.  *See id.* 26:16 18.

The Court agrees with the parties.  Because the Settlement Agreement eliminates the delay, costs, and uncertainty that further litigation would create, this factor supports approval. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

### iii.    *Risk of Maintaining Class Action Status through Trial*

Defendant has indicated it would "strongly oppose any certification of a class for other than settlement purposes." *Final Approval Mot.* 27:3 4.  Defendant argued

> that its policies and practices fully complied with California law; individual issues would predominate because its non-exempt employees were subject to variant employment policies, practices, and procedures; and any consideration of the reasons why any Class Member who failed to receive a meal or rest break or worked off-the-clock (if at all) would raise individual issues that could not be resolved on a class-wide basis.

*Id.* 14:22  15:5.  Because Defendant has a valid basis for contesting class certification through trial and would have done so, this factor favors final approval of the Settlement Agreement.

### iv.    *Amount Offered in Settlement*

The fourth factor in assessing the fairness of the proposed settlement is the amount of the settlement.  "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (internal quotations omitted).  The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by negotiators." *Id.* at 625.  Rather, the settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation.

Here, the parties agreed to settle all claims for a total sum of $500,000.  *See Final Approval Mot.* 1:13.  This equals 13.62 percent of Plaintiff's estimation of Defendant's total

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | | Date | July 6, 2021 |
|---|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | | |

maximum liability. *See Estimate Memo*.[5]  This percentage is well within the range of possible approval.  *See Turner v. Motel 6 Operating L.P.*, No. CV 17-2544 PSG (SSX), 2018 WL 6977474, at *3 (C.D. Cal. Nov. 6, 2018) (approving a wage-and-hour class action settlement where the gross settlement amount was 6.8 percent of Plaintiff's estimation of Defendant's total maximum liability); *Khaled v. Library Sys. and Sers., LLC*, No. CV 19-1478 PSG (KKx), 2021 WL 2366952, at *6 (C.D. Cal. May 14, 2021) (approving a wage-and-hour class action settlement where the gross settlement amount was 4.6 percent of Plaintiff's estimation of Defendant's total maximum liability).

Further, the parties reached this settlement after engaging in adversarial and arm's-length mediation. *See Final Approval Mot.* 23:2  3.  The Court considered the parties' respective opinions regarding the value and merits of this case during the preliminary approval stage and continues to find that the Gross Settlement Amount is appropriate in light of the challenges described above.

In sum, given the risks of ongoing litigation and the substantial recovery for the Class, the amount offered in settlement is reasonable.  *See Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *12 (C.D. Cal. Apr. 29, 2014) (noting that while settlements will not make most class members completely whole, class members must "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation"); *Vasquez*, 266 F.R.D. at 489 (noting that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" is a relevant factor).  Accordingly, this factor favors final approval of the Settlement Agreement.

*v.    Extent of Discovery Completed and State of the Proceedings*

This factor requires the Court to gauge whether Plaintiff had sufficient information to make an informed decision about the merits of his case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases." *Young v.*

---

[5] Plaintiff estimates that Defendant's total maximum liability is $3,671,227.00.  *See generally Estimate Memo.*  Specifically, Plaintiff estimates Defendant's maximum liability as follows: (1) approximately $472,000 for the paystub claims; (2) $796,093 for the meal/rest period claims; (3) $515,134 for the minimum wage and unpaid overtime claims; (4) $0 for the failure to provide days of rest claims; and (5) $1,888,000 for the PAGA claims.  *See generally id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

*Polo Retail, LLC*, No. C 02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks omitted).

Here, Class Counsel participated in extensive formal and informal discovery. *See Final Approval Mot.* 28:26  27. This discovery and investigation included, among other things, production of data and documents relevant to class-wide liability in support of the investigation and evaluation of Defendant's employee handbooks, procedure manuals, and operations manuals regarding its wage and hour practices. *See Haag Decl.* ¶ 11. Class Counsel also investigated the claims through interviews, data analysis conducted by an expert, and numerous discussions with Defense Counsel regarding the merits of Plaintiff's claims and Defendant's potential legal defenses. *See id.* ¶ 12. Further, the parties participated in a full day of mediation that resulted in the Class Settlement. *See Final Approval Mot.* 28:27  29:1. This suggests that the parties had a clear view of the strengths and weaknesses of their positions in the case when negotiating the Settlement Agreement.

Accordingly, the Court is confident that Plaintiff had enough information to make an informed decision about the settlement    after arm's-length negotiation and mediation    based on the strengths and weaknesses of the case. *See Glass v. UBS Fin. Servs.*, No. C 06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (reasoning that the parties' having undertaken informal discovery prior to settling supports approving the class action settlement). As such, this factor weighs in favor of granting final approval of the Settlement Agreement.

> vi.    *Experience and Views of Counsel*

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). While counsel's views are instructive, they do not entitle the plaintiff to a presumption of fairness. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

Here, Class Counsel has considerable experience handling wage-and-hour and class action cases. *See Haag Decl.* ¶ 3. The Court is satisfied that this experience has allowed Class Counsel to evaluate the merits of the claims and risks associated with prosecuting them through trial and appeal. The Court accordingly credits Counsel's determination that the settlement is fair and reasonable and finds that this factor weighs slightly in favor of final approval.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

      *vii.   Presence of a Government Participant*

     Because there is no government entity directly participating in the case, this factor is not relevant to the analysis.

      *viii.   Class Members' Reaction to the Proposed Settlement*

     In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (2010); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 29 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."); *see also Arnold v. Fitflop USA, LLC*, No. CV 11-0973 W (KSC), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

     Here, Class Notices were sent to all 116 Class Members and only one returned as undeliverable. *See Final Approval Mot.* 31:16 17. Not a single Class Member objected to the Class Settlement or requested exclusion. *See id.* 31:19 20. The Court finds that this positive reaction weighs in favor of final approval.

      *ix.   Balancing the* Hanlon *Factors*

     Having considered all of the *Hanlon* factors, the Court finds that all factors favor final approval.

      *x.   Propriety of the Fair Labor Standards Act Release*

     In its preliminary order, the Court expressed that the Settlement is within the range of possible approval because Class Members must opt-in in order to release their federal FLSA claims. *See Prelim. Approval Order* at 15. California district courts have uniformly interpreted the FLSA to require that class members affirmatively elect to participate in a lawsuit before they are bound by its settlement. *See Tijero v. Aaron Bros., Inc.*, No. C 10-1089 SBA, 2013 WL 60464, at *7 *8 (N.D. Cal. Jan. 2, 2013) ("[T]he Court finds that it is contrary to § 216(b) to bind class members to a release of FLSA claims where, as here, the members have not affirmatively elected to participate in the lawsuit by filing a written consent form."); *La Parne v.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

*Monex Deposit Co.*, SACV 08-302 DOC, 2010 WL 4916606, at *3, *8 (C.D. Cal. Nov. 29, 2010) ("[O]nly class members who affirmatively 'opt-in' to the Settlement should be bound by the Settlement's release of FLSA liability . . . several courts have determined that it would be contrary to the statute to bind class members who do not affirmatively elect, through opt-in procedures, to participate in the FLSA suit."); *Stokes v. Interline Brands, Inc.*, No. 12-cv-5527-JD, 2014 WL 5826335, at *4 (N.D. Cal. Nov. 10, 2014) ("FLSA claims are collective action claims that require an affirmative opt-in by written consent on the part of the claimants."); *Kakani v. Oracle Corp.*, No. C 06-6493 WHA, 2007 WL 1793774, at *7 (N.D. Cal. June 19, 2007) ("The FLSA prohibits traditional class actions and authorizes only an opt in collective action . . . . Workers who voluntarily send in a claim form and affirmatively join the action, of course, can be bound to a full release of all federal and state rights. But it is unconscionable to try and take away the FLSA rights of *all* workers, whether or not they choose to join in affirmatively.").

As the Court expressed in its preliminary order, the Settlement Agreement states that "Class Members will be deemed to have opted-in to the settlement for purposes of the FLSA by operation of cashing, depositing, or otherwise negotiating their Individual Settlement Payment check." *Settlement Agreement* at 12, § 6(C); *Prelim. Approval Order* at 9. "Courts in the Ninth Circuit have found such FLSA waivers enforceable where there is no concern that the settlement agreement adequately compensates the class for the release of all claims." *See Dawson v. Hitco Carbon Composites, Inc.*, No. CV 16-7337 PSG (FFMx), 2019 WL 6138467, at *7 n.2 (C.D. Cal. July 9, 2019). Accordingly, because the Court continues to find that the Settlement Agreement is adequate, the Settlement Agreement contains a proper FLSA waiver.

### xi.   *Briseño Factors*

In *Briseño v. Henderson*, the Ninth Circuit stressed that, before approving class action settlements, district courts must look for signs that class counsel has pursued their own self-interests in the negotiations. *See Briseño*, 2021 WL 2197968, at *6. The Court identified three "red flags" that are indicative of collusion between class counsel and defendant: (1) if class counsel receives a disproportionate distribution of the gross settlement amount; (2) if there is a "clear-sailing" agreement; and (3) if any of the gross settlement amount reverts to the defendant. *See id.*, at *7. The Court discusses each "red flag" in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

> ### a. *Disproportionate Distribution of the Settlement*

One sign that class counsel has pursued their own self-interests over those of the class is if class counsel receives a disproportionate distribution of the gross settlement fund. *See id.*, at *7. For example, in *Briseño*, the Court found that class counsel's receipt of $5.85 million of the $8 million gross settlement fund raised red flags, particularly because the class received less than $1 million. *See id.*, at *3.

Here, Class Counsel seeks $125,000, or 25 percent of the Gross Settlement Fund, which is the benchmark amount in class action settlements. *Fees Mot.* 2:13  15; *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (2002). After examining the attorneys' fees Plaintiff seeks compared to the number of hours worked and the stated hourly fee, the Court is not concerned about collusion based on Class Counsel's fee request. The Court discusses this issue further when analyzing Plaintiff's motion for attorneys' fees.

Because Class Counsel did not receive a disproportionate distribution of the Gross Settlement Fund, this factor does not raise a red flag regarding the Settlement Agreement.

> ### b. *Presence of a 'Clear-Sailing Arrangement'*

A settlement agreement contains a "clear-sailing arrangement" when "the defendant agrees not to challenge a request for an agreed-upon attorney's fee." *Briseño*, 2021 WL 2197968, at *7. Here, there is no such arrangement in the Settlement Agreement. Accordingly, this factor does not indicate collusion or inappropriate self-interest.

> ### c. *Presence of a Reversionary Clause*

A reverter clause is one that "returns unawarded fees to the defendant, rather than the class." *Id*. Here, there is no reversionary clause in the Settlement Agreement. Accordingly, this factor does not indicate collusion or inappropriate self-interest.

> ### d. Briseño *Conclusion*

Having considers each of the *Briseño* factors, the Court finds that the Settlement Agreement was not collusive or based on inappropriate self-interest.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

*xii.*     *Final Approval Conclusion*

Having concluded that the *Hanlon* factors favor final approval, and that the Settlement Agreement is appropriate under *Briseño*, the Court **GRANTS** Plaintiff's motion for final approval of the Settlement Agreement.

III.    <u>Attorneys' Fees, Costs, and Incentive Award</u>

Plaintiff moves for (1) $125,000 in attorneys' fees for Class Counsel, (2) reimbursement of $12,500 in litigation costs incurred by Class Counsel, and (3) a $10,000 incentive award for Plaintiff. *See Fees Mot.* 2:6 8. The Court addresses each request in turn.

A.    <u>Attorneys' Fees</u>

i.     *Legal Standard*

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the Court may award reasonable attorneys' fees and nontaxable costs. The Court "must carefully assess" the reasonableness of the fee award. *See Staton*, 327 F.3d at 963.

Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the percentage-of-recovery method or the lodestar method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944 45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method).

ii.     *Discussion*

Under the percentage-of-recovery method, courts typically use 25 percent of the fund as a benchmark for a reasonable fee award. *See id.* at 942. The percentage can vary, however, and courts have awarded more or less than 25 percent of the fund in attorneys' fees as they deemed appropriate. *See Vizcaino*, 290 F.3d at 1047 (noting that courts generally award between 20 and 30 percent of the common fund in attorneys' fees).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

Here, Plaintiff requests $125,000, which represents the benchmark of 25 percent of the Gross Settlement Amount. *Fees Mot.* 2:5  6.  "The 25 [percent] benchmark, although a starting point for analysis, may be inappropriate in some cases.  Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."  *See Vizcaino*, 290 F.3d at 1048 (internal quotations omitted).  As such, the Court will analyze this request under the *Vizcaino* factors and cross-check the reasonableness of the award using the lodestar method.

### a.    Percentage of the Common Fund Method

When assessing the reasonableness of a fee award under the common fund theory, courts consider "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048  50).

### 1.    Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."  *Id.*

Here, given the participation rate, Plaintiff estimates Settlement Class Members will receive on average of $2,825.43.  *Final Approval Mot.* 19:9  11.  This is a significant recovery for participating Class Members.  *See Bravo v. Gale Triangle, Inc.*, No. 16-03347 BRO (GJSx), 2017 WL 708766, at *10 (approving an average per-member recovery of $389.81).

Accordingly, the Court finds that this result weighs in favor of awarding fees equal to the Ninth Circuit's 25 percent benchmark.

### 2.    Risk of Litigation

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees.  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046  47; *see also Vizcaino*, 290 F.3d at 1048 (discussing that "[r]isk is a relevant circumstance" in determining an attorney fee award in a common fund case).  As discussed above, the Court agrees that continued litigation would have been risky given

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

Defendant's defenses and challenges to class certification.  Accordingly, this factor supports awarding fees equal to the 25 percent benchmark.

### 3.    *Skill Required and Quality of Work*

The Court also considers the skill required to prosecute and manage this litigation, as well as Class Counsel's overall performance.  *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047.

Here, Class Counsel "faced opposition by defense counsel from a prominent law firm experienced in complex litigation, and nevertheless were able to reach a valuable settlement to the benefit of Class Members." *Fees Mot.* 5:17 20.  Therefore, the Court finds that this factor favors awarding fees equal to the 25 percent benchmark.

### 4.    *Contingent Nature and Plaintiff's Financial Burden*

Class Counsel "took on this case on a contingency basis, with no guarantee of any payment" while spending 177 hours and $105,315 litigating this matter.  *Fees Mot.* 6:27 7:1; *Haag Decl.* ¶ 18.  Therefore, because Class Counsel faced the risk of walking away with nothing after investing substantial resources in this matter, the Court finds that this factor favors awarding fees equal to the 25 percent benchmark.

### 5.    *Awards Made in Similar Cases*

The requested award in this settlement meets the benchmark of awards authorized in similar cases.  *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 462 (E.D. Cal. May 14, 2013) (awarding 25 percent of the common fund as attorneys' fees);  *Admona v. University of Phoenix, Inc.* 913 F. Supp. 3d 964, 984 (E.D. Cal. Dec. 20, 2012) (granting attorneys' fees of 29 percent of the common fund).  Accordingly, this factor supports awarding fees equal to the benchmark.

### 6.    *Balancing the Factors*

Because all the factors support awarding fees equal to the 25 percent benchmark, the Court finds that the request is reasonable under the percentage-of-the-common-fund method.  However, the Court will cross-check the reasonableness of the award using the lodestar method.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

b.    *Lodestar Method*

The lodestar method is a way for the Court to cross-check the reasonableness of a fee award. To calculate the "lodestar," the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. *See McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). The court may raise or lower the lodestar based on several factors:

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 n.7 (9th Cir. 2002).

Class Counsel asserts that the current lodestar is $105,315, which is based on 177 hours spent prosecuting Plaintiff's claims. *See Haag Decl.* ¶ 18. In support, Class Counsel submitted timekeeping statements from the two attorneys who worked on the case, *see id.*, as follows:

| Name | Title | CA Bar Admission | Rate | Time | Fees |
|---|---|---|---|---|---|
| Brent Buchsbaum | Named Partner | 1994 | $625.00 | 92 | $54,740 |
| Laurel N. Haag | Named Partner | 2000 | $625.00 | 85 | $50,575 |
| | | Totals: | | 177 | $105,315 |

1.    *Rates*

When calculating the lodestar, the reasonable hourly rate is the rate prevailing in the community for similar work. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is based on the prevailing market rates in the relevant community." (internal quotations omitted)); *Viveros v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

*Donahue*, No. CV 10-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal. Mar. 27, 2013)
("The court determines a reasonable hourly rate by looking to the prevailing market rate in the
community for comparable services."). The relevant community is the community in which the
court sits. *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). If
an applicant fails to meet its burden, the court may exercise its discretion to determine
reasonable hourly rates based on its experience and knowledge of prevailing rates in the
community. *See, e.g.*, *Viveros*, 2013 WL 1224848, at *2; *Ashendorf & Assocs. v. SMI-Hyundai
Corp.*, No. CV 11-02398 ODW (PLAx), 2011 WL 3021533, at *3 (C.D. Cal. July 21, 2011);
*Bademyan v. Receivable Mgmt. Servs. Corp.*, No. CV 08-00519 MMM (RZx), 2009 WL
605789, at *5 (C.D. Cal. Mar. 9, 2009).

Here, Class Counsel charged hourly rates of $625. *See Haag Decl.* ¶ 18. The Court turns
to the *2020 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and
Practices* ("Real Rate Report") as a useful guidepost to assess the reasonableness of these hourly
rates in the Central District. *See Eksouzian v. Albanese*, No. CV 13-728 PSG (AJWx), 2015 WL
12765585, *4  *5 (C.D. Cal. Oct. 23, 2015). The Real Rate Report identifies attorney rates by
location, experience, firm size, areas of expertise and industry, as well as specific practice areas,
and is based on actual legal billing, matter information, and paid and processed invoices from
more than eighty companies. *See Hicks v. Toys 'R' Us-Del., Inc.*, No. CV 13-1302 DSF JCG,
2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014). Courts have found that the Real Rate Report
is "a much better reflection of true market rates than self-reported rates in all practice areas."
*Id.*; *see also Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014)
(considering the Real Rate Report); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F.
Supp. 2d 415, 433 (S.D.N.Y. 2012) (same).

The 2020 Real Rate Report provides that, in Los Angeles, partners litigating employment
and labor matters have hourly rates ranging from $470 to $753. *See Real Rate Report* at 74.
Accordingly, the Court accepts Class Counsels' rate of $625 as within the range charged in the
relevant community.

### 2.     *Hours*

An attorneys' fee award should include compensation for all hours reasonably expended
prosecuting the matter, but "hours that are excessive, redundant, or otherwise unnecessary"
should be excluded. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012).
"[T]he standard is whether a reasonable attorney would have believed the work to be reasonably

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

expended in pursuit of success at the point in time when the work was performed." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).

Here, Class Counsel have spent 177 hours on this litigation. *See Haag Decl.* ¶ 18. As discussed at length above, the Settlement Agreement was reached after conducting discovery and engaging in a full-day mediation. *See id.* ¶¶ 12, 16. The scope of this case and the stage to which it progressed before settling indicate that the time expended by Class Counsel was reasonable.

Accordingly, the Court accepts Class Counsel's proposed lodestar of $105,315.

### 3.  *Lodestar Cross-Check*

Class Counsel's lodestar of $105,315 is less than the requested award of $125,000. Specifically, the requested award represents the lodestar with a multiplier of 1.19.

Courts in this Circuit have approved awards with similar multipliers. *See Vizcaino*, 290 F.3d at 1051 n.6 (finding that a "bare majority" of multipliers in common fund cases fall in the 1.5 to 3.0 range); *McKenzie v. Fed. Exp. Corp.*, No. CV 10-2420 GAF (PLAx), 2012 WL 2930201, at *10 (C.D. Cal. July 2, 2012) (approving a 3.2 multiplier in a wage-and-hour class action case); *Salgado v. T-Mobile USA, Inc.*, No. 1-17-cv-0339-JLT, 2020 WL 3127931, at *25 (E.D. Cal. June 12, 2020) (finding a multiplier of 5.55 to be too high and reducing attorney awards to equal a 3.70 multiplier).

Moreover, Class Counsel anticipates spending additional time on further administration of the settlement, which will result in a final multiplier that is lower than 1.19. *See Fees Mot.* 8:13  16.

Accordingly, the Court finds that Class Counsel's request of $125,000 is reasonable and supported by both the percentage-of-the-common-fund and lodestar methods. As such, the Court **GRANTS** Plaintiff's motion for $125,000 in attorneys' fees.

### B.  Litigation Costs

In class action settlements, "[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1048.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

Here, Class Counsel request reimbursement of $12,500 in expenses. *See Fees Mot.*
4:13  16.  This includes expenses that are typically charged to fee-paying clients, including "the
mediation fee. . ., the complex filing and serv[ice] costs. . ., expert fees and LexisNexis. . ., [and]
copying and postage costs." *See id.*  The Court has reviewed the accounting records and is
satisfied that the costs are reasonable.  Therefore, the Court **GRANTS** the request for costs in
the total amount of $12,500.

    C.    <u>Incentive Award</u>

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948, 958 (9th Cir. 2009).  When considering requests for incentive awards, courts
consider five principal factors:

> (1) the risk to the class representative in commencing suit, both financial and otherwise;
> (2) the notoriety and personal difficulties encountered by the class representative; (3) the
> amount of time and effort spent by the class representative; (4) the duration of the
> litigation; (5) the personal benefit (or lack thereof) enjoyed by the class representative as
> a result of the litigation.

*See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Further, courts
typically examine the propriety of an incentive award by comparing it to the total amount other
class members will receive. *See Staton*, 327 F.3d at 975.

Here, Plaintiff requests an incentive award of $10,000. *See Fees Mot.* 2:8  9.  The award
represents 0.2 percent of the Gross Settlement Fund.

Plaintiff asserts that this award is appropriate because he

> put a significant amount of time and effort into this litigation, including: remaining in
> regular and consistent contact with their counsel throughout the pre-and-post litigation
> investigation, the litigation itself, and the settlement process, collecting and providing all
> of the documents in his possession, discussing his work experiences with counsel,
> participating in an all-day mediation, and reviewing the settlement terms and written
> settlement agreement.

*See Haag Decl.* ¶ 25.

Plaintiff estimates that participating Class Members will receive on average $2,825.43.
*Final Approval Mot.* 19:9  11.  Therefore, Plaintiff's award represents roughly 3.5 times the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

average per-Member recovery. As such, the Court finds the requested award to be reasonable. *See Edwards v. Chartwell Services, Inc.*, No. 16-CV-9187-PSG (KSX), 2018 WL 10455206, at *2, *8 (C.D. Cal. Aug. 27, 2018) (approving a $10,000 incentive award which was over 25 times the average per-Member recovery in a wage-and-hour class action); *Saldivar v. Priority One Medical Transport, Inc.*, No. CV 09-04789 MMM (EX), 2011 WL 13213889, at *16 (C.D. Cal. Mar. 22, 2011) (awarding a $5,000 incentive award which was over nine times the average per-Member recovery in a wage-and-hour class action); *Dearaujo v. Regis Corp.*, No. 2:14-CV-01408-KJM-DB, 2017 WL 3116626, at *9, *15 (E.D. Cal. July 21, 2017) (awarding a $15,000 incentive award which was over 15 times the average per-Member recovery in a wage-and-hour class action).

Accordingly, the Court **GRANTS** Plaintiff's request for a $10,000 incentive award.

D.    Settlement Administration Amount

Plaintiff proposes to pay Simpluris approximately $6,000 to administer the Settlement. *Final Approval Mot.* 3:9 11. The Court continues to find this request reasonable given the costs for mailed notice and distribution of settlement funds to a class of 116 individuals. *See Lowe v. Popcornopolis LLC*, No. CV 19-6984 PSG (RAOx), 2020 WL 5991509, at *9 (C.D. Cal. July 8, 2020) (approving estimated $24,000 to administer class of 191 individuals); *Ching v. Siemens Indus., Inc.*, No. 11 cv 04838 MEJ, 2014 WL 2926210, at *2 (N.D. Cal. June 27, 2014) (approving an estimated $15,000 claims administrator fee for 68 claims); *Ozga v. U.S. Remodelers, Inc.*, No. C 09 05112 JSW, 2010 WL 3186971, at *2 (N.D. Cal. Aug. 9, 2010) (granting $10,000 to the claims administrator for 156 claims).

IV.    Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiff's motions for final approval of the class action settlement and for attorneys' fees, costs, and an incentive award. Accordingly, it is **HEREBY ORDERED AS FOLLOWS:**

- •    The Court approves settlement of the action between Plaintiff and Defendant, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate. The parties are directed to perform their settlement in accordance with the terms set forth in the Settlement Agreement.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3087 PSG (SKx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Amador Contreras v. Armstrong Flooring, Inc., et al | | |

- Class Counsel is awarded $125,000 in attorneys' fees and $12,500 in costs. Additionally, Plaintiff is awarded a $10,000 incentive award. The Court finds that these amounts are warranted and reasonable for the reasons stated in this Order.

- The Court approves payment in the amount of $6,000 to Simpluris for settlement administration costs.

- Without affecting the finality of this judgment in any way, this Court hereby retains exclusive jurisdiction over Defendant and the Settlement Class Members for all matters relating to the litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this order.

This Order closes the case.

**IT IS SO ORDERED.**